## Case No. 17,887

### WINSOR v. McLELLAN.

[2 Story, 492;[1] 6 Law Rep. 440.]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

INTEREST IN VESSEL — BILL OF SALE — SECURITY FOR DEBT — DELIVERY OF POSSESSION — RECORD OF MORTGAGE — ASSIGNEE IN BANKRUPTCY — STATUS.

1. A bill of sale of one half of a vessel, as collateral security for a debt, with a provision, that the mortgagors may keep possession of the vessel, and use her for their own benefit until default of payment, is valid, as an immediate conditional sale.

2. Delivery of possession to a purchaser, of a moiety of a vessel, when in the possession of the other part-owner, is not, in general, indispensable to pass the property.

3. As between the mortgagor and mortgagee notice to the part-owner in possession is not necessary.

4. By the Revised Statutes of Massachusetts, it is not necessary, as between the parties themselves, that a mortgage of personal property should be recorded.

5. The assignee in bankruptcy, except in cases of fraud, stands in no better situation than the bankrupts themselves.

[Cited in Ex parte Dalby, Case No. 3,540; Ex parte Ames. Id. 323; Coggeshall v. Potter. Id. 2,955; Sixpenny Sav. Bank v. Estate of Stuyvesant Bank, Id. 12,919; Yeatman v. New Orleans Sav. Inst., 95 U. S. 766; Stewart v. Platt, 101 U. S. 738; Hauselt v. Harrison, 105 U. S. 406; Putnam Sav. Bank v. Beal, 54 Fed. 578.]

[Cited in Brown v. Brabb, 67 Mich. 22, 28. 34 N. W. 405. 408. Cited in brief in Collender Co. v. Marshall. 57 Vt. 234. Cited in Goss v. Coffin. 66 Me. 435; Martin v. Bowen, 51 N. J. Eq. 457, 458, 26 Atl. 824, 825; Ryder v. Ryder (R. I.) 32 Atl. 921; Shaw v. Glen, 37 N. J. Eq. 35. Cited in brief in Tucker v. Daly, 7 Grat. (Va.) 331.]

6. The fact that one of the mortgagors made oath at the custom-house, subsequent to the bill of sale, that the vessel belonged to him and his partner, cannot affect the rights of the mortgagee.

7. The bankrupts, some months previous to their bankruptcy, conveyed, by a bill of sale, as collateral security for a debt of $2,000. one half of a vessel, of which the other half was owned by the master, and agreed to assign all future policies of insurance thereon, as further security for the same debt, which was done, it being agreed, that the mortgagors might use the vessel for their own benefit, until default of

[1] [Reported by William W. Story, Esq.]

payment. The bill of sale was not recorded. The vessel, at the time the bill of sale was made, was at sea, in the possession of the master. Between that time, and the filing of the petition for the benefit of the bankrupt law by the mortgagors, the vessel came once to Boston, the place of business and residence of the mortgagors, and twice to Bath, the place of business and residence of the master, but the mortgagees did not take possession. Five days before the filing of the petition they sent notice to the master of the bill of sale. The said mortgaged moiety of the vessel having been sold by direction of the assignee, it was *held*, that the proceeds of the sale should be paid to the mortgagee.

[8. Cited in Re Jordan, Case No. 7,529, and in Re Wynn, Id. 18.117, to the point that a mortgage or other conveyance made as security for a debt, evidenced by a note or bond, will operate as security for the same continuing debt, though the evidence of it be changed by renewal, or otherwise.]

This was the case of a question adjourned into the circuit court from the district court of Massachusetts. The petition set forth, that Edward and William H. McLellan, of Boston, merchants and co-partners, of whom the petitioner, Henry Winsor, of Boston, was the assignee in bankruptcy, included in the schedule of their assets one half of the brig Napoleon, at sea, and in the schedule of their liabilities, $2.000 due to the trustees of Mrs. Rebecca S. McLellan, secured by a bill of sale of one half of the brig Napoleon. The bill of sale was made Dec. 9, 1841, and the petition of the McLellans for the benefit of the bankrupt law was filed Nov. 22, 1842. In the intermediate time, the trustees did not take possession of the vessel, but the bankrupts employed her for their own use. And on April 28, 1842, Edward McLellan made oath at the custom-house, that he and his partner, and George W. Jordan, were the owners of the brig. Jordan was the master of the vessel, and owned one moiety. The trustees, on the 8th of April, 1843, petitioned the court for leave to sell the half of the brig, which had been conveyed to them, and the sale was authorized to be made under the direction of the assignee. The sale took place, and the trustees executed a conveyance, but the collector refused to issue a new register, unless upon a transfer by the assignee. The assignee accordingly executed a bill of sale to the purchasers, and received the purchase-money, amounting to $1.600, which sum was subject to deductions, for payments and charges, of $133.59. The balance was claimed by the assignee to be paid into the general fund, for the benefit of the creditors.

The answer of the trustees, in addition to the above facts, set forth, that the policies of insurance, made upon the said moiety, subsequent to the bill of sale, had been transferred and made payable to them, and that it was agreed, at the time the bill of sale was given, that the bankrupts should use the vessel until default of payment. The vessel, at that time, was at sea, but between that time and the time of filing the petition

for the benefit of the bankrupt law it had been once at Boston, and twice at Bath, where the master lived. The trustees did not take possession; but, on the 17th of November, 1842, they addressed a letter to the master. notifying him of the transfer to them, and, subsequently to the receipt of that letter, the vessel was managed for the joint use of the trustees and the master. The answer concluded with a prayer, that the assignee be ordered to pay over to them the balance of the proceeds in his hands, and for costs.

Upon these facts, the question was adjourned into the circuit court.

Wm. Gray, for petitioner.
Sidney Bartlett, for respondents.

STORY, Circuit Justice. In considering the present question, it should be constantly borne in mind, that there is no provision in our bankrupt act of 1841, c. 9 [5 Stat. 440], corresponding with the provision in the statute of 21 Jac. I. c. 19, §§ 10, 11, and the more recent statutes of England, respecting reputed ownership in cases of bankruptcy. See statute 6 Geo. IV. c. 16, § 72. There is no proof, nor even any allegation of fraud between the trustees and the bankrupts, with a view to delay or defeat or defraud their creditors, in the present transaction. So that the case stands drily and nakedly upon the mere rights of the assignee, acting for the general creditors, under a general assignment in bankruptcy. Now, the principle has been long established, that the assignee in bankruptcy does not stand in the position of a purchaser, nor even in so favorable a position as an individual creditor may stand. 2 Story. Eq. Jur. §§ 1228, 1229, 1411; Langton v. Horton, 1 Hare, 549, 563; Muir v. Schenck, 3 Hill, 228; Murray v. Lylburn, 2 Johns. Ch. 441, 443; Deac. Bankr. (Ed. 1827) pp. 320, 321, c. 10, § 3. The assignee in bankruptcy takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition, that the bankrupt himself held it, and subject to all the equities, which exist against the same in the hands of the bankrupt. This was clearly laid down by Lord Hardwicke in Brown v. Heathcote, 1 Atk. 160, 162, and has ever since been adhered to, not only in courts of equity, but also, as the case of Leslie v. Guthrie, 1 Bing. (N. C.) 697, abundantly shows, at law. But I need not dwell upon this point, as it came very fully under consideration in the case of Rand v. Winslow [not reported] at the last October term of the circuit court in Maine.

It appears from the facts disclosed by the petition and answer, that in July, 1841, the trustees had in their possession $2.000 of trustee money. belonging to the cestui que trust, Mrs. S. M. McLellan, the wife of one of the bankrupts, and that they lent that sum to the firm of E. & Wm. H. McLellan

(the bankrupts); and on the 9th of December, 1841, upon a settlement with the firm, they took an accountable receipt from the firm for the payment of that sum and interest, on demand; and at the same time, they took as a collateral security a bill of sale of the one half of the brig Napoleon, then at sea, the one half being owned by the firm, and the other half being owned by one Jordan, who was then master thereof. And it was at the same time agreed, that the policy, then existing on the one half of the brig on behalf of the firm, should be assigned to the trustees, and also all policies on her future voyages, as collateral security for the same purposes. Assignments were accordingly made on the respective policies. No notice was given to the master of the bill of sale by the trustees, or otherwise, until the 17th of November, 1842, when a letter was written to him by the trustees, informing him of the fact, the brig then being abroad. Up to this period the firm had the possession and use of the brig in common with the master, and received the profits and earnings thereof, the brig having returned once to Boston (the place of residence and business of the firm,) and twice to Bath, the place of residence and business of the master. The firm petitioned for the benefit of the bankrupt act on the 22d of November, 1841, (five days only after the letter was written) and were duly declared bankrupts on the 3d of January, 1843.

It is under these circumstances, that the assignee, on behalf of the general creditors, insists that the want of delivery to and possession by the trustees is fatal to their claim, and that no property passed to them under the bill of sale made by the bankrupts to the trustees, one of the trustees being one of the bankrupts. In the petition, there is no allegation, that the bill of sale was made to the trustees in contemplation of bankruptcy, and therefore, that question, as well as the question, whether the conveyance was intentionally fraudulent, might properly be laid aside, as not belonging either to the allegations or the proofs in the statements of the parties. I shall, nevertheless, take occasion to speak a few words to the point, as if it were properly presented by the proceedings before the court.

The first objection to the conveyance, taken by the petitioner, is, (as has been already suggested) that there was no delivery or possession of the brig made or taken by the trustees; nor, indeed, any notice of the transfer, given to the master, until five days before the bankruptcy; so that, in point of fact, during all the intermediate period between the conveyance and the notice, the grantors had the full possession and use of the brig and of her profits. Now, in the first place, it is clear, that there can be no delivery of possession of a ship by one part owner of his share to a purchaser, when the actual possession is in another part owner;

such, for instance, as in the present case, where the master is owner of a moiety of the vessel, and in actual possession thereof. The most, that can, under such circumstances, be required is, that the master, or other part owners, should have notice of the transfer, so as to put them in a correct position, so far as their own rights are concerned. That actual possession by a purchaser of the share of a part owner is not indispensable, at least in ordinary cases, is clearly established in Addis v. Baker, 1 Anstr. 222, and was affirmed in the case of a mortgage of an undivided share of a ship, in the case of Gillespy v. Coutts, Amb. 652. See, also, Abb. Shipp. by Shee (Ed. 1840) pt. 1, c. 1, § 3; 2 Kent, Comm. (4th Ed.) p. 132, § 45. In the next place, however the case may be as to a subsequent purchaser without notice, or to a creditor claiming by judgment and execution, where no possession is given by the part owner, or notice of the transfer given to the other part owners in possession, (which may require the application of a different principle,) it is clear, that as between the parties themselves to the transfer, the conveyance will pass a complete and effectual title, independent of the delivery of any possession. This is a known and old rule, applicable to the sale of all personal chattels. See 2 Bl. Comm. 448. In cases of bankruptcy, (independently of fraud,) as we have already seen, the assignee can take only what the bankrupt himself could lawfully hold; and he succeeds merely to that title, and nothing more. Nay, even in cases of reputed ownership, in bankruptcy, under the provision of the statute of 21 Jac. 1. c. 19, §§ 10, 11, the omission of mortgagees to take possession of a ship for nine months after the transfer to them, and leaving the ship in the intermediate time in the possession and management of the mortgagees, has been held not to affect the title of the mortgagors, as against the assignees in bankruptcy, the mortgagees having, in fact, taken possession before the bankruptcy of the mortgagors; for the court said, that the ship could not be treated as within the order and disposition of the mortgagors at the time of their bankruptcy. Lord Chief Justice Abbott on that occasion added: "The bill of sale might be void upon the statute of Elizabeth, as against creditors; but not as against the parties, who executed it; and their assignees are in this respect in no better situation." Robinson v. M'Donnell, 2 Barn. & Ald. 134, 136. See, also, the remarks of Mr. Justice Bailey in the same case. The case of Briggs v. Parkman, 2 Metc. (Mass.) 258, is a very strong authority to show, that the omission to take possession of the mortgaged premises, being personal property, and agreeing, that until condition broken the mortgagor may retain the possession and use thereof, nay, even may sell and dispose thereof, substituting other property as security, are not to be deemed per se acts of fraud upon creditors;

but the presumption of fraud may be repelled, and the conveyance held good against the general assignees under the insolvent act of 1838 (chapter 163).

But it is further objected, that, notwithstanding the formal bill of sale to the trustees, yet, taking the other papers, the receipt given by the trustees, and the order on the policies, it was not the intention of the parties, that the title should pass to the trustees, but that the bill of sale and order were to be held as collateral security, and on repayment of the debt, the "bill of sale and order for insurance shall be returned to the owners, and be null and void." It strikes me, that this is a very forced and unnatural construction of the proceedings of the parties. Their manifest object was to give collateral security to the trustees, by way of mortgage on the vessel itself, and on the policies underwritten thereon, and not merely for them to hold the bill of sale as a formal instrument by way of pledge, without giving effect to it as a conditional transfer of the property. The permission of the owners to take the profits and earnings of the vessel in the intermediate time, and until the debt was to be paid, was not inconsistent with, but in pursuance of, the original agreement. The policies were underwritten, exactly as they should be, in the name of the mortgagors, who were the general owners, subject only to the rights of the mortgagees. The subsequent change of the papers by Edward McLellan, without the consent or knowledge of the trustees, could not change their rights, even if he intended thereby to affect them, of which there is not any evidence. In short, it appears to me, that no other sensible construction can be put upon the original transaction, than to treat it as an immediate conditional sale of the moiety of the vessel to the trustees, as collateral security for the debt due to them. But, then, it is said, that if the bill of sale is to be deemed, with the accompanying papers, to have created a mortgage, (as I think it clearly did,) then it is void, because it was not recorded, as required by Rev. St. Mass. c. 74, § 5. That section provides: "That no mortgage of personal property, hereafter made, shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by, the mortgagee, or unless the mortgage be recorded by the clerk of the town where the mortgagor resides." It may well admit of doubt, whether the statute was intended to apply to any cases of mortgages of undivided interests in personal property, of which, of course, no exclusive possession could be given to, or retained by, the mortgagee. But, assuming it to be otherwise, still the statute expressly holds such unrecorded mortgages to be valid between the parties; and the assignees in bankruptcy, as we have already seen, except in cases of fraud, take only what the bankrupt himself is entitled to.

But then again, it is urged, that the transaction is void under the second section of the bankrupt act of 1841 (chapter 9), as a conveyance made in contemplation of bankruptcy, and for the purpose of giving the trustees an undue preference as creditors. Now, this argument is mainly, if not wholly, founded upon the ground that the conveyance is not to be treated as a sale or conveyance of the moiety of the vessel to the trustees until the 17th of November, 1842 (only five days before the bankruptcy), when they gave notice to the master of the brig of their title, which notice, however, as the brig was then abroad, did not reach the master until long afterwards. But it appears to me, that the foundation on which the argument rests, utterly fails; for in the view which I take of the matter, the bill of sale took effect, as a mortgage, at the time of the execution and delivery thereof to the trustees on the 9th of December, 1841. There is no pretence to say, that at that time, either the mortgagors or the trustees contemplated any bankruptcy of the mortgagors. The notice to the master was not necessary to found a title in the trustees; but it was at most only an assertion of their title, necessary to be made for the protection of the master, and for the protection of the trustees against any subsequent bona fide purchaser or judgment creditor. The notice took effect from the time, when it was sent to the master; and the time, when it reached him, is not material, so far, at least, as the present assignee is concerned. The only remaining consideration, under any aspect of the case, would be as to the conveyance being founded in a positive actual fraud upon the creditors of the bankrupt. But this, upon the facts stated in the case, cannot be either inferred or presumed. And, indeed, as has been already suggested, no question arises under the petition and answer in the present case, either as to the conveyance having been made in contemplation of bankruptcy, or with an intent to defraud the creditors of the bankrupt.

Upon the whole, I shall direct it to be certified to the district court, upon the question adjourned into this court, that upon the facts set forth in the said petition and answer, the said one half of the said brig Napoleon, after the said Edward and W. H. McLellan were decreed bankrupts, was the property of, and should be holden by the said trustees, for the benefit of the said Rebecca McLellan, and that it was not the property of, or to be holden by the said assignee, for the benefit of the creditors of the estate of the said bankrupts.

WINSOR (PIERCE v.). See Cases Nos. 11,-150 and 11,151.

WINSOR (RICHARDSON v.). See Case No. 11,795.

WINSOR (ROGERS v.). See Case No. 12,-023.