## CHARLES BROWN v. MARVIL I. BRABB.

*Assignment for benefit of creditors—Chattel mortgage—Failure to file—Rights of assignee.*

1. The assignee of an insolvent debtor, in the absence of fraud in *fact* and of statute regulations, takes *only* the debtor's rights, and is affected with claims, liens, and equities existing against the debtor were he asserting claim to the property.

2. An assignee for the benefit of creditors is not a purchaser in good faith, and the statute relative to common-law assignments does not place him upon any better footing than the creditors he represents.

3. An *unfiled* mortgage, valid between the parties, is equally valid and effective as against the assignee for the benefit of the creditors of the mortgagor, who became such *prior* to the date of the mortgage, and have not been led to do or to omit doing anything upon the strength of such non-filing.

4. The filing of a chattel mortgage is designed to take the place of the delivery of the property; and the object of the statute requir-

67 MICH.—2.

| 67 | 17 |
|----|-----|
| 82 | 515 |
| 67 | 17 |
| 86 | 655 |
| 86 | 661 |
| 67 | 17 |
| 92 | 164 |
| 67 | 17 |
| 94 | 126 |
| 67 | 17 |
| 98 | 335 |
| 67 | 17 |
| 116 | 146 |
| 67 | 17 |
| 119 | 545 |

ing such filing is to protect persons dealing upon credit with one who is in possession of personal property as the ostensible owner, upon the reliance of such ownership, from secret conveyances, by which he is enabled to obtain a fictitious credit to which he would not be entitled if the true situation were known.[1]

Appeal from Midland. (Hart, J.) Argued June 10, 1887. Decided October 6, 1887.

Bill to cancel a mortgage as fraudulent as to creditors. Defendant appeals. Decree granting relief prayed for reversed, and one entered in accordance with the opinion. The facts are stated in the opinion.

*M. H. Stanford,* for complainant.

*Dwight N. Lowell,* for defendant.

CHAMPLIN, J. Complainant filed a bill in the Midland circuit setting forth that January 14, 1884, John J. Ryan and Ethelbert J. Brewster, of Midland City, were doing business as John J. Ryan & Co., and on that date they made an assignment to complainant, for the benefit of their creditors, of all their property and rights not exempt from execution, without preference, who accepted the trust, and qualified as such assignee, and proceeded to carry out the trust as such assignee.

That on January 4, without his knowledge or the knowledge or consent of Brewster, Ryan, in the firm name, gave a chattel mortgage to defendant, Brabb, for $1,928.67, covering 20 buggies, and with the usual conditions; that the mortgage was given to take up certain notes previously given, and that they never were given up; that the mortgaged property was left in the possession of Ryan & Co. ; that when the mortgage was given it was agreed between Ryan and Brabb that the mortgage should be left with the township clerk, with

---

[1] See *Johnson v. Stellwagen, ante,* 10.

instructions not to file unless some other mortgage on the same property should be presented for filing, and that the clerk was so instructed.

That on January 21 Brabb caused said mortgage to be filed in the township clerk's office, and demanded the property covered by the mortgage of complainant, which was refused, and that Brabb still claims property in said mortgage.

That complainant claims said mortgage to be void as to him and the creditors of Ryan & Co., and believed Brabb would surrender said mortgage, or test its validity, until Brabb informed him that he would not discharge it, but insist upon the lien; that the value is over $100.

That complainant has converted the assets into money, and that he will soon be ready to distribute to the creditors.

That Brabb refuses to bring suit, and insists that he shall hold complainant liable for the value of the property converted, and that he cannot distribute until the mortgage is canceled, and claims that Brabb will harass and annoy him by suits to enforce his claim at law.

The prayer for relief is to cancel the mortgage, and to restrain defendant from bringing suit, of any name or nature, against complainant, to recover the mortgage debt, and for general relief.

December 12, 1885, complainant amended his bill, setting up that the debts of Ryan & Co. were $17,000, and the nominal assets $18,000, and the true value $5,000.

The defendant answers, and admits the copartnership, and denies their insolvency. He neither admits nor denies the assignment, but leaves complainant to proof of the same.

He denies that it can be material whether the mortgage of Ryan & Co. was made without the knowledge of complainant, and denies that it was made without the knowledge or consent of Brewster.

He avers that Ryan & Co. were indebted, January 4, to the Romeo Carriage Company and to the defendant, in the sum

of $2,428.67, giving the items and dates; that on January 4 such statement was taken by defendant to both partners, who assented to it, and agreed to give the chattel mortgage in question as security, which was given in pursuance of the agreement and assent of each; that Brewster, being obliged to leave by cars, assented to and directed Ryan to execute the chattel mortgage for the firm in part security, and that it was done in accordance with such agreement and direction; that in making the adjustment Ryan & Co. agreed to give the chattel mortgage, and a real estate mortgage on property mentioned, and to pay $500 in cash; that, in consequence of Brewster being obliged to leave, the real-estate mortgage was not completed, nor the money paid, but that Ryan and wife executed the real-estate mortgage, and were only awaiting Brewster's return, before completing the real-estate mortgage and payment of the $500, when defendant was to deliver up the notes, and receipt for his claim and the carriage company's claim, and rely entirely on the security, but that Ryan & Co. never completed the real-estate mortgage or paid the $500; that the chattel mortgage was given absolutely as part security for $1,928.67, the real-estate mortgage was to be the additional security, and the $500 was the balance; that on said date Ryan & Co. executed two notes, aggregating $1,928.67. to the credit of defendant, and what was owing to him, setting out the terms of the notes, and the making of the mortgage to secure the same; that it was a *bona fide* indebtedness from Ryan & Co. to defendant, and was credited upon the account as shown Ryan & Co., leaving only the $500 due the carriage company; that complainant knew this, and that both he and Ryan & Co. have been aware of this from the first, and until the filing of the bill never claimed differently.

That defendant is entitled to said mortgage lien and the avails of the property in complainant's hands, and that, upon the payment of the $500, he has been at all times ready to

deliver up the old account, and receipt to Ryan & Co. in full, save as to his mortgage rights.

He denies there was any other agreement, or that the notes were to be delivered up, save upon the completion of the agreement, and says that it was understood that the notes of $1,928.67 were to be a credit upon the old notes and account; that defendant has been wrongfully dispossessed of the chattel-mortgage property; that complainant has sold and converted the same to his own use, and is liable to defendant for the value of the same.

He denies that any arrangement was made to deliver the mortgage to the town clerk as stated, and says that defendant took the mortgage immediately to the clerk, delivered it for filing, directed it to be filed, and paid said clerk his legal fees for filing, and did all he could to file the same, and that, if it was not filed then, it was not his fault; that he subsequently learned it had not been filed, and he again directed its filing, and he denies that the failure to file was by reason of any agreement.

He neither admits nor denies the possession of complainant, but leaves him to his proofs, save that he avers that complainant has disposed of said property.

He avers that the lien was a subsisting lien to secure the $1,928.67, and claims a decree for an accounting by complainant for the avails of said property, and to pay to defendant the sum in satisfaction of said lien.

He denies that the mortgage was in fraud of the creditors of Ryan & Co., or any other person, and claims the security, and avers knowledge of the same by complainant at the date of the assignment, and claims the affirmative relief for a decree to turn over the property, or account, and pay the moneys received therefor, and says that complainant has $1,490 of such money, which should be ordered to be paid over to defendant.

The defendant claims the benefit of a demurrer the same as though he had demurred generally and specially.

A general replication was filed, and hearing in open court demanded. The cause was heard April 30, 1886, and a decree made February 21, 1887, granting the relief prayed for by complainant. Defendant appeals.

The assignee of an insolvent debtor, in the absence of fraud in fact and of statute regulations, takes only the debtor's rights; and consequently he is affected with claims, liens, and equities which exist as against the debtor were he asserting claim to the property. It was long ago held in England that assignees in bankruptcy take subject to whatever equity the bankrupt is liable to. *Mitford v. Mitford,* 9 Ves. 87; *Sherrington v. Yates,* 12 Mees. & W. 855; *Brown v. Heathcote,* 1 Atk. 160, 162.

Such is the prevailing doctrine in this country. *Winsor v. McLellan,* 2 Story, 492; *Fletcher v. Morey,* Id. 555; *Mitchell v. Winslow,* Id. 630; *In re Griffiths,* 1 Low. Dec. 431; *In re Dow,* 6 N. B. R. 10; *Coggeshall v. Potter,* 1 Holmes, 75; *Johnson v. Patterson,* 2 Woods, 443; *Goddard v. Weaver,* 1 Id. 257, 260; *In re Collins,* 12 N. B. R. 379; *Platt v. Preston,* 3 Fed. Rep. 394; *Yeatman v. Saving Inst.,* 95 U. S. 764; *Adams v. Collier,* 122 Id. 382 (7 Sup. Ct. Rep. 1208).

It is held in this State that the assignee for the benefit of creditors is not a purchaser in good faith. The statute relative to common-law assignments does not place the assignee upon any better footing than the creditors he represents.

There is no question in this case but that the chattel mortgage executed by John J. Ryan & Co. was given in good faith, to secure an honest debt, and is valid between the parties.

The important question is whether a chattel mortgage not filed pursuant to How. Stat. § 6193, and valid between the parties, is equally valid and effective as against the assignee

for the benefit of creditors who became such prior to the date of the mortgage.

In *Stewart v. Platt*, 101 U. S. 731, 739, the Supreme Court of the United States, in passing upon this question, say:

" Although the chattel mortgages, by reason of the failure to file them in the proper place, were void as against judgment creditors, they are valid and effective as between the mortgagors and the mortgagee. *Lane v. Lutz*, 1 Keyes, 203; *Wescott v. Gunn*, 4 Duer, 107; *Smith v. Acker*, 23 Wend. 653.

" Suppose the mortgagors had not been adjudged bankrupts, and there had been no creditors, subsequent purchasers, or mortgagees in good faith to complain, as they alone might, of the failure to file the mortgages in the towns where the mortgagors respectively resided. It cannot be doubted that Stewart, in that event, could have enforced a lien upon the mortgaged property in satisfaction for his claim for rent. The assignee took the property subject to such equities, liens, or incumbrances as would have affected it had no adjudication in bankruptcy been made. While the rights of the creditors whose executions preceded the bankruptcy were properly adjudged to be superior to any which passed to the assignee by operation of law, the balance of the fund, after satisfying those executions, belongs to the mortgagee, and not to the assignee for the purposes of his trust. The latter, representing general creditors, cannot dispute such claim, since, had there been no adjudication, it could not have been disputed by the mortgagors. The assignee can assert, in behalf of the general creditors, no claim to the proceeds of the sale of that property which the bankrupts themselves could not have asserted in a contest exclusively between them and their mortgagee."

The question arose, but was not decided, in *Putnam v. Reynolds*, 44 Mich. 113, the mortgage being held void as to creditors; it appearing in the record of that case, but not stated in the opinion, that, between the date of the mortgage and the date of filing, there were creditors as to whom the mortgage would be void.

The assignee is not a creditor, and, as he does not stand in the position of a *bona fide* purchaser, it is difficult to see how he occupies any vantage ground over his grantor, except as

he represents the rights of creditors who have become such while the mortgage was kept off from the files. He is merely a trustee to collect and convert the assets, and distribute them among the creditors. His powers and duties arise partly from the common law, and partly from the statute regulating and enforcing assignments for the benefit of creditors.

Section 3 of that statute (How. Stat. § 8741) provides:

"Every such assignment shall confer upon such assignee the right to recover all property, or right or equities in property, which might be reached or recovered by any of the creditors of such assignor."

Under this section he doubtless would be authorized to recover property conveyed by the assignor in fraud of his creditors, and perhaps equitable interests or things in action secreted or conveyed by the assignor in fraud of his creditors. But when the unrecorded mortgage is *bona fide,* and made without fraudulent intent, it is valid as against all creditors except those who have become such while it remained unrecorded. The other creditors could not reach it, and consequently this section of the statute would not empower the assignee to recover the property covered by it.

The difficulty in obtaining a clear perception of the rights of the assignee has arisen in the mistaken view that an unrecorded mortgage is absolutely void as to all creditors. It must be confessed that the language used in many decisions has led to this conclusion. In most cases, however, if not in all, such language has been applied to those cases where the creditors referred to were those who became such while the mortgage was unrecorded. Thus, in *Thompson v. Van Vechten,* 27 N. Y., at page 582, Chief Justice Denio says:

"But it was the apparent, and I think the real, object of the act, to prevent the setting up of secret mortgages against persons who might deal with the mortgagor on the faith that his property was not thus incumbered. It is true, the mortgage cannot be legally questioned until the creditor clothes

himself with a judgment and execution, or with some legal process against his property; for creditors cannot interfere with the property of their debtor without process. But, when they present themselves with their process, they may, I think, go back to the origin of their debt, and show, if they can, that, *when it was contracted,* the incumbrance with which they are now confronted existed, and was kept secret by being withheld from the proper office."

This case is cited in brief of counsel as authority to show that an unfiled mortgage is absolutely void. A careful reading of the case would have shown the limitation which, when the facts are disclosed, governs such cases. ·

The distinction was noticed and the principle again stated in *Parshall v. Eggert,* 54 N. Y. 18, 22. It was there said:

"If the instrument under which the plaintiffs claimed were a chattel mortgage, it would be void as against the right of Hunter, the creditor, whom the defendant, the sheriff, represents, inasmuch as the instrument had not been filed when the debt of Hunter was created. For this position the case of *Thompson v. Van Vecten,* 27 N. Y. 581, is a direct authority. It was there held that the time when the creditor became such fixed the rights of the parties; that a mortgage not then filed was void as to him, although he should not then be in a position to at once attack its validity."

The distinction was again clearly made, and the doctrine applied, in the case of *Stewart v. Beale,* 7 Hun, 405, and affirmed in 68 N. Y. 629, upon the opinions written in 7 Hun, 405.

The case of *Wilson v. Esten,* 14 R. I. 621, is in many of its features a parallel case to the one under consideration. There, a mortgage was given in good faith, to secure a loan of money to enable the mortgagor to start in business. It was dated May 5, 1883, but was not recorded. The statute declared that—

"No mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the said mortgage be recorded," etc.

On January 14, 1884, the mortgagor executed a voluntary assignment for the benefit of his creditors. The assignee went on and sold the property covered by the mortgage, and paid the money received therefor into the registry of the court, where it was claimed by the general creditors, and also by the mortgagee. The general creditors claimed that the neglect to have the mortgage recorded operated as a fraud upon them, because, in consequence of the neglect, they gave credit to the mortgagor which otherwise they would not have have given, and therefore that they were entitled to the fund. The court found, from the testimony, that the neglect to record the mortgage was unintentional, and that the lien of the mortgage was not affected by the failure to place it upon record.

The court said :

" The creditors contend that they are entitled to the fund because the mortgage, being unrecorded, is valid only between the parties to it. The creditors, however, show no right to the fund which they can enforce in this case, unless they are entitled to it under the assignment; and the question, therefore, is whether the assignee, as trustee for them, has acquired a right which is superior to the mortgage, or has simply succeeded to the right of his assignor, which is subject to it. There can be no doubt that ordinarily, where there is no statute to add to the effect of the assignment, a voluntary assignee succeeds simply to the right of the assignor."

And the court held that, as they had no statute in that state adding to the ordinary powers of a voluntary assignee, the mortgagee was entitled to the money, for the reason that the mortgage was good between the parties, and the assignee occupied no better position than his assignor.

In *Shaw v. Glen*, 37 N. J. Eq. 32, the firm of James M. Shaw & Co., creditors of John H. Marrin, took from him on October 17, 1882, a chattel mortgage to secure a debt of $375. Marrin resided at Elizabeth, in Union county, but the mortgage was, two days after its date, by mistake

recorded in Essex county, where the goods were, and where they supposed the mortgagor resided.

December 28, 1882, Marrin executed a voluntary assignment to defendant, Glen, for the equal benefit of his creditors, under the assignment act. The assignee at once took possession of the goods then in the mortgagor's hands. Soon after that, the mortgagees discovered their mistake, and recorded their mortgage in Union county. The mortgage was given in good faith in all respects. The suit was brought to forclose the chattel mortgage. The case is so clearly in point that I feel justified in quoting the opinion of the chancellor. He says:

"The defendant, the assignee, insists that the mortgage is void as to him because it was not recorded in Union county, where the mortgagor resided when it was made, before the assignment to him was delivered.

"The act provides (P. L. of 1881, p. 227) that any mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, made after the approval of that act, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession, of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless recorded according to the directions of the act, which are that it be recorded in the clerk's or register's office of the county where the mortgagor resides, if he resides in this state, but, if he does not reside in this state, then it is to be recorded in the clerk's or register's office of the county where the property is at the time of executing the mortgage.

"But the mortgage was clearly valid, as against the mortgagor, when he made the assignment, notwithstanding it had not been recorded according to law (*Nat. Bank v. Sprague,* 20 N. J. Eq. 13); and the assignee took his title to the property subject to the equities to which it was subject in the hands of his assignor. Such is the rule as to assignees in bankruptcy. Such an assignee is not bound by the fraudulent conveyances of his assignor (*Pillsbury v. Kingon,* 33 N. J. Eq. 287), but, in cases unaffected by fraud, he is bound by the equities to which the property assigned was liable when it came to his hands from his assignor (*Mitford v. Mitford,*

9 Ves. 87; *Winsor v. McLellan,* 2 Story, 492; *In re Gregg,* 3 N. B. R. 131). And this rule has been repeatedly applied in mortgage cases like the present. *In re Griffiths,* 3 N. B. R. 179; *Potter v. Coggeshall,* 4 Id. 19; *Stewart v. Platt,* 101 U. S. 731. The same just rule is on every principle obviously applicable to assignees under the assignment act. The failure to record the mortgage does not render it invalid as against the defendant."

The rule laid down in this case does not conflict with that which treats the assignee as the representative of creditors for all purposes of attacking conveyances made in fraud of creditors. *Pillsbury v. Kingon,* 33 N. J. Eq. 287, lays down this rule, and supports it with satisfactory reasoning and upon authorities cited. See, also, *Schaller v. Wright,* 70 Iowa, 667 (28 N. W. Rep. 460), where the supreme court of Iowa held the assignee of an insolvent estate represents the creditors, and that the title to property fraudulently conveyed vests in him.

Turning now to decided cases in our own State, we observe that many cases are decided merely reciting the language of the statute declaring unfiled chattel mortgages void as to creditors, without stating whether the demands of the creditors existed before or after the date of the mortgage. Such are the cases of *Hurd v. Brown,* 37 Mich. 484; *Haynes v. Leppig,* 40 Id. 602; *Cooper v. Brock,* 41 Id. 488; *Putnam v. Reynolds,* 44 Id. 113; *Wallen v. Rossman,* 45 Id. 333.

Commencing with *Fearey v. Cummings,* 41 Mich. 376, which precedes in date some of the cases cited above, the Court, on page 383, say:

"If the mortgage was made with intent to hinder, delay, and defraud creditors, or, inasmuch as the possession was not altered, if it was not put on file prior to plaintiffs becoming creditors, it was invalid as against them; the law being that those who become creditors whilst the mortgage is not filed are protected, and not merely those who obtain judgments or levey attachments before the filing. Still, no one as creditor at large can question the mortgage. He can only do that by means of some process or proceedings against the property."

In *Waite v. Mathews,* 50 Mich. 392, the mortgages were filed by mistake in the wrong township. The defendant was a United States marshal, and represented creditors whose debts were older than the mortgages. The chief controversy was upon the validity of the mortgages as against the creditors whom he represented. The court below held that the mortgages were absolutely void, as matter of law, for want of immediate possession.

This Court said:

" The other question was substantially decided in *Kohl v. Lynn,* 34 Mich. 360, and *Fearey v. Cummings,* 41 Id. 376, where it was distinctly intimated that in order to justify the application of the statute making mortgages, whether honest or not, absolutely void for want of filing or possession, some act must be done, or some detriment sustained, during the interval. As against all such rights, a mortgage without such possession or filing, is absolutely, and not merely presumptively, void; while conveyances not by way of mortgage are only presumptively void, under such circumstances [citing cases].

"The case of *Wallen v. Rossman,* 45 Mich. 333, where a different rule is claimed to have been given, was one where the debt was incurred subsequently to the date of the mortgage, as appears by the original record; the facts not being set out in the report. \* \* \* It is to be remembered that filing in the proper office is equivalent, for saving purposes, to actual delivery of property; and this is often delayed by mistake as to the proper office, or by other causes involving no fraud. Rules so stringent as to destroy honest transactions by such omissions must have a reasonable application. The object of the statute is to prevent, and not to facilitate, fraud; and such a construction as was adopted below would not, in our opinion, tend to good. We do not mean to decide that creditors who have actually been damnified by reliance on the title being clear to postpone action may not be protected.

In *Talcott v. Crippen,* 52 Mich. 633, the bill of sale, which was treated as a mortgage, was dated April 6, 1882, and was filed Aug. 10, 1882. The property was attached Aug. 11, 1882, to recover demands created between February 9 and August

3, 1882. Held, as to these creditors, the mortgage was void.

In *Crippen v. Jacobson*, 56 Mich. 386, the mortgage was dated May 9, 1884, and purposely not recorded until May 15, 1884, when the mortgagee took possession, and sold the goods mortgaged. He was garnished at the suit of creditors who had become such after the date and before the filing of the mortgage. On page 389, Mr. Justice CAMPBELL, giving the opinion of the Court, said:

" We have heretofore held that a chattel mortgage not seasonably filed is void, and not merely presumptively void, against creditors whose rights intervene between the making and filing.    *    *    *    When the debt is not incurred on the credit of an apparently clear title, which is in fact covered by a secret mortgage, the cases cited hold that there is no right to complain of a subsequent mortgage without taking some steps which puts the creditor on a different legal footing than that of a quiescent party. But when a chattel mortgage exists, and is concealed, it is, under the statute, void, for the reason that it produces a false appearance of solvency, when in fact a person known to have mortgaged his stock would not be as likely to get credit as one who had given no such security; and those who deal with such a debtor are liable to be defrauded by appearances. One who gives credit under such circumstances is necessarily exposed to that mischief, and the law has removed all questions of suspicion or notice by making chattel mortgages void, at all events, against creditors who deal with a debtor so situated. Such creditors are directly within the policy of the statute."

The language of the statute contains no qualification as to the time the creditors become such. It does not say that the unfiled mortgage shall be void as to subsequent creditors, and this has led some courts to hold that it is void as to all creditors. But a qualification is plainly implied from the language of the whole section, considered with reference to the object of the law.

It must be remembered that the filing is designed to take the place of the delivery of the property. The object of the law is to protect persons dealing upon credit with one who is in possession of personal property as the ostensible owner,

upon the reliance of such ownership, from secret convey-ances, by which he is enabled to obtain a fictitious credit to which he would not be entitled if the true situation were known. Until such secret conveyance is given, the law has no force. There is nothing for its provisions to operate upon, and the creditor has the protection of the ordinary remedies for the enforcement of his demands. These are not enlarged by the statute, and no new rights or remedies are conferred upon the creditor. To him it makes no difference whether the debtor sells, mortgages, or gives away his property either secretly or openly, unless it is done with intent to defraud him. His remedy to reach the property conveyed depends entirely upon the fraudulent character and intent with which the debtor has conveyed it away. As to him, the debtor may secure another person by delivering the property to him, followed by a continued change of possession; in which case he would not be likely to extend any further credit.

But suppose, instead, his debtor gives a mortgage in good faith, to secure an honest debt, to another creditor, or for a present consideration, for a loan of money. There is nothing in the quality of these acts by which he is injured. There is no legal wrong done him. Nor is there any legal wrong done him if the mortgage is kept secret or unfiled, unless he has thereby been led to extend new credit or further time, or been led to abstain from taking action to collect his debt, in ignorance of the real situation.

It would seem unreasonable that without extending any new credit, or otherwise suffering loss, on account of the mortgage being kept from the files, or being filed in a wrong place, he could be permitted to say that the mortgage is void as to him, and that he would attach the property, and deprive the holder of his security, simply because he had failed to comply with the law. He has not been led to do or to omit

doing anything upon the strength of such non-compliance with the statute.

And herein lies the difference between his case and the innocent purchaser. or incumbrancer under the recording laws. These protect subsequent purchasers and incumbrancers in good faith, who have been led to rely upon the record title. To my mind the reason why the word "subsequent" was not inserted in the statute before the word "creditors" was to meet just that contingencey where an existing creditor might suffer injury by relying upon the apparent situation, and so be damnified by postponing action, or extending time of credit already given, or, possibly, in some other manner.

The complainant has not shown that he represents any creditor who is in a position to challenge the validity of defendant's mortgage, or claim the benefit of the statute as avoiding it, because of its not having been filed seasonably. We must therefore deny him the relief which he asks.

The answer prays affirmative relief, and defendant is entitled to it at our hands. The testimony shows that the property was sold by the consent of defendant, and that he reserved his claim upon the fund. The gross amount realized from the sale was $1,490. The testimony shows that it cost about 10 per cent. to dispose of it, and that the assignee guaranteed the buggies on the sale, and many came back for repairs. The assignee paid out for such repairs $104.40. This amount, with the expense of sale ($149), must be deducted from the $1,490, leaving $1,236.60, which complainant must pay to defendant as the net avails of such property.

The decree of the circuit court must be reversed, and a decree entered here in accordance with this opinion. The taxable costs of both parties will be paid by the assignee out of the other funds in his hands.

The other Justices concurred.