M. J. P. DEMPSEY, EXECUTOR, ETC., v. ISAAC PFORZHEIMER ET AL.

*Chattel mortgage—Failure to file—Rights of subsequent mortgagee —Payment.*

1. A creditor who has the right to secure a lien by legal process *superior* to that of a chattel mortgage *then on file,* because his debt was contracted while the mortgage was *withheld from record,* may obtain a like lien by the execution to him by the debtor of a chattel mortgage to secure the same indebtedness *after* the filing of the first mortgage.

2. A note and mortgage given for an existing indebtedness will be presumed to have been taken as security, and not as payment, in the absence of a contrary showing.

Error to Wayne. (Gartner, J.) Argued May 12, 1891. Decided July 28, 1891.

Trover. Defendants bring error. Reversed, and judgment entered in this Court in favor of defendants for costs of both courts. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson,* for appellants.

*Keena & Lightner,* for plaintiff.

[The points of counsel are fully stated in the opinion, where the authorities are reviewed.—REPORTER.]

MORSE, J. On the 22d day of October, 1886, William H. Harris and Charles T. Karpp, in partnership in the general jewelry business in Detroit, and both residents of that city, borrowed $2,000 of Caspar H. Borgess. To assure the payment of the same, they executed to him, under the firm name of Harris & Karpp, a chattel mortgage for that amount, which mortgage was taken by said

Borgess in good faith to secure such indebtedness, but was not filed in the city clerk's office until December 26, 1887, at 9:08 o'clock A. M. This mortgage covered all the goods "now contained or hereafter to be contained" in the jewelry store; also the fixtures and safes therein; and was payable on or before October 23, 1889.

On December 30, 1887, Harris & Karpp executed a mortgage to the defendants in this suit to secure an indebtedness incurred in the purchase of merchandise between the date of the execution and the filing of the Borgess mortgage, which merchandise was sold by defendants in ignorance of the existence of the indebtedness to Borgess or the execution of the mortgage to him. The two mortgages embraced substantially the same property. The mortgage to defendants recited that it was to secure an indebtedness of $2,528.53, which was the amount of the merchandise sold as above. It also contained the following recital:

"*And whereas,* the said parties of the first part [Harris & Karpp] expect to buy from the said parties of the second part [the defendants] from time to time, during the continuance of this mortgage, goods on time, and on such terms of credit as may be agreed upon; *and whereas,* the indebtedness of the said parties of the first part to said parties of the second part is therefore liable to change in amount and time of payment; *and whereas,* the said parties of the first part have agreed that the payment of the existing indebtedness of said parties of the first part to said parties of the second part, and also the payment of the other indebtedness for goods to be purchased by said parties of the first part from said parties of the second part, shall be secured in the manner hereinafter mentioned."

The $2,528.53 was to be paid according to five promissory notes of even date with the mortgage, as follows: $500 in 60 days, $500 in 90 days, $500 in 4 months, $528.53 in 6 months, and $500 on demand. This mort-

gage was filed the same day it was executed, at 3:30 o'clock P. M. Subsequently defendants, by Henry T. Thurber, their attorney and agent, took possession of said stock, being the same described in both mortgages. Plaintiff's testator, by James T. Keena, at the time of the sale, demanded said stock under his mortgage. Defendants refused to deliver the stock, and sold the same under their mortgage, expressly denying the validity of testator's mortgage, and in disregard of said mortgage. There was upon the property so sold by defendants, at the time of such sale, a chattel mortgage held by Eugene Deimel for $600, which was a prior lien to the defendants', and they sold such property under their chattel mortgage subject to the payment of the Deimel mortgage.

The defendants were, at and during the time the merchandise aforesaid was sold to Harris & Karpp, merchants in New York city, selling jewelry, etc., at wholesale, and Harris & Karpp were conducting the business of selling jewelry, etc., in Detroit, Mich., during such time, at retail. Such merchandise was sold in the usual course of business, and upon usual terms of sale.

Plaintiff's testator thereupon brought this action of trover against defendants for the conversion of said stock, which at the time of the seizure and sale by defendants was worth $3,200. The defendants composed the copartnership of Pforzheimer, Keller & Co. No part of the principal or interest secured by the mortgage of plaintiff's testator has been paid. The original plaintiff having died, the cause was revived in favor of his executor. Defendants' plea was the general issue. The case was tried before Hon. George Gartner, one of the Wayne circuit judges, without a jury, who made a finding of law upon the facts, which were stipulated, that the plaintiff

was entitled to recover against the defendants the sum of $2,520.

It is plain, under the rulings of this Court, that the Borgess mortgage was void for want of filing, as against the original indebtedness of Harris & Karpp to defendants, incurred while the mortgage was in existence and not filed, and for goods sold by defendants in the usual course of business, in ignorance of the existence of such mortgage. *Fearey v. Cummings*, 41 Mich. 383; *Wallen v. Rossman*, 45 Id. 333; *Waite v. Mathews*, 50 Id. 392; *Talcott v. Crippen*, 52 Id. 633; *Crippen v. Jacobson*, 56 Id. 386; *Root v. Harl*, 62 Id. 420; *Johnson v. Stellwagen*, 67 Id. 10; *Brown v. Brabb*, Id. 17; *Cutler v. Steele*, 85 Id. 627.

If the defendants, before taking their mortgage, and after the filing of the Borgess mortgage, had proceeded against the property so mortgaged, and obtained by any process of law a lien upon it, or had they obtained judgment upon their claim, and issued execution, and levied on it, there can be no doubt but such lien or levy would have been good as against the Borgess mortgage. But it is claimed on behalf of plaintiff that because defendants took a mortgage to secure the indebtedness to them after the Borgess mortgage was put on file, and therefore had notice of it, they cannot now claim the benefit of the rule adopted by this Court as shown above, and that they have no standing under the statute upon which the rule is founded. It is contended that, to avail themselves of the statute, the defendants, at the time of seizing the goods in question, must have the standing either of "creditors of the mortgagors," or of "subsequent purchasers or mortgagees in good faith;" that they cannot claim as subsequent mortgagees in good faith, because they took their mortgage with full notice of the Borgess mortgage, which had then been on record

for four days; and that the benefit of the statute cannot
be invoked in favor of creditors, except by those who
have a lien by process of law upon the property in ques-
tion; and it is argued that a mortgage lien will not
avail, except, perhaps, in equity.  We are cited to *Bank
v. Bates*, 120 U. S. 560 (7 Sup. Ct. Rep. 679), and other
cases, in support of this contention.  But we can see no
difference between a lien obtained by process and one
gotten by consent of the owner through a chattel mort-
gage.  If the defendants were entitled, as they undoubt-
edly were, to obtain a lien upon this property by legal
process, and to hold it to the amount of such lien
against the mortgage of Borgess, because the debt they
were seeking to collect was contracted while this mort-
gage was withheld from record, we can see no reason in
principle why they cannot hold the property under a
lien obtained by chattel mortgage to secure the same
indebtedness.

A review of the cases in our own Court upon this sub_
ject may not be unprofitable.  The contention of plaintiff
that, in order to take advantage of the non-filing of the
Borgess mortgage, the defendants must first have a lien
upon the property *by process*, is based upon language used
in *Thompson v. Vechten*, 27 N. Y. 568, and that case
has often been referred to in our decisions on this sub-
ject, and is considered a leading case.  It was there said
that—

"The mortgage cannot be legally questioned until the
creditor clothes himself with a judgment and execution,
or with some legal process against his property; for cred-
itors cannot interfere with the property of their debtor
without process."

The gist of the reason is that the creditor has no bus-
iness with the debtor's property until he has obtained
possession of it by some legal process that gives him a

lien upon it. This is not because of any right that the mortgagor, who has kept his mortgage from record, has against the other creditors, but because such creditors have no right to touch the debtor's property without his consent, without legal process; and where the debtor has turned out his 'property to a creditor in payment of his debt, or in pledge for its payment, or, as in this case, a chattel mortgage which authorizes him to take possession of it, it seems to me that the reason of the rule is satisfied, and that he has a right to defend against a prior mortgage which is void as against him. And I think some of our decisions decidedly tend in this direction, and that none of them militate against it.

In *Fearey v. Cummings*, 41 Mich. 383, Mr. Justice GRAVES uses this language:

"Still no one as creditor at large can question the mortgage. He can only do that by means of some process *or proceeding* against the property."

Is not the taking into possession of mortgaged property under the mortgage, for the purposes of foreclosure, a "proceeding" against the property?

In *Putnam v. Reynolds*, 44 Mich. 114, the Court refused to foreclose such a mortgage, declaring it void as to the mortgagor's creditors because it was kept from the record. The assignee for the benefit of creditors, who had no knowledge of this mortgage at the time the mortgagor made the assignment, defended against the mortgage. The complainant insisted that the assignee had no standing, because his rights were no greater than the assignor, and the mortgage was valid as against the mortgagor. Mr. Justice COOLEY, in speaking of this claim, said:

"The assignee is not a purchaser for value, and not a creditor; and even creditors, it is said, cannot attack the mortgage, except indirectly, through a seizure of the

86 MICH.—42.

property by attachment *or other suitable process.* This is doubtless true where the invalidity of the mortgage arises from the fraud of the mortgagor; *but whether the same rule will apply when the mortgage was originally valid, but is made void by the neglect of the mortgagee, may well be questioned.* It would be easy to suggest weighty considerations arising in such cases, but not existing in the case of a fraudulent mortgage, and which it might well be thought should control. But we do not think the question fairly arises in this case."

Here we have a pretty good index to the opinion of this learned jurist. It would seem that he doubted the necessity of any lien upon the property by the attacking or defending creditor in a case like the present.

In *Root v. Potter,* 59 Mich., at page 504, Chief Justice CAMPBELL says:

"It has always been held in this State that *general* creditors, having no judgment or *lien* on the debtor's property, cannot attack conveyances or other dealings for fraud;" citing *Tyler v. Peatt,* 30 Mich. 63; *Maynard v. Hoskins,* 9 Id. 485; *Griswold v. Fuller,* 33 Id. 268.

In the present case, the defendants cannot be said to be "general creditors." They are creditors having a lien on the property, and lawfully in possession under such lien. An examination of the cases above cited by Chief Justice CAMPBELL will show that they have no bearing upon the question at issue here.

In *Trowbridge v. Bullard,* 81 Mich. 456, Mr. Justice LONG says:

"It has many times been held by this Court that *general* creditors, having no judgment or *lien* on the debtor's property, cannot attack conveyances or other dealings for fraud;" citing a number of Michigan cases, in addition to those cited in *Root v. Potter, supra,* to wit: *McKibben v. Barton,* 1 Mich. 213; *Stoddard v. McLane,* 56 Id. 11; *Scott v. Chambers,* 62 Id. 532; *Krolik v. Root,* 63 Id. 562.

The main case is relied upon by the plaintiff in this case, but it does not touch the question here involved. The first case cited is of no importance to the issue here.

In *Stoddard v. McLane* an execution had been levid on personalty, and the aid of equity was invoked to set aside fraudulent conveyances of the property levied upon. Held, that a lien obtained by the levy of execution on personalty did not in general require the aid of equity for its enforcement, and that there was a remedy at law.

In *Scott v. Chambers*, 62 Mich. 532, 538, Chief Justice CAMPBELL uses this language:

" It is the settled law of this State that creditors cannot attack the interest of third parties, alleged to have been obtained by fraud, until they have obtained a standing by legal proceedings; and, so far as these bonds are concerned, they could only be reached by judgment creditors."

This is the strongest language anywhere used in our reports in favor of plaintiff's contention; but the case was one where a creditor was proceeding in equity against a receiver of an assignor for the benefit of creditors (who stood in the place of an assignee who failed to qualify under the assignment) for neglect, and making him, with the assignor and others, parties defendant, for the purpose of reaching and bringing under the assignment certain lands and other property, including two United States bonds, issued in 1882 and 1885 to the wife of the assignor. It was held that the creditor had no right to implead the receiver without leave of the court, and no right to file the bill against the other parties, as that right belonged to the receiver alone. The property sought to be reached was in the name and possession of other parties than the debtor, and the language of the Court was applicable to that

case; but there is no reason why it should control this, where the property is lawfully in the hands of the defendants under a mortgage lien, reduced to possession for the purposes of foreclosure, and where the parties assailed have a right to a standing in court to defend their right to possession, and to attack the alleged prior lien of the plaintiff.

In *Krolik v. Root,* 63 Mich. 562, 567, the language of Mr. Justice SHERWOOD is:

"The complainants in this case never obtained a lien upon the property in question, or any part thereof, so far as appears upon this record. They are not in a situation to attack the validity of defendants' last mortgage *without such lien obtained in some manner.*"

It *Crippen v. Jacobson,* 56 Mich. 386, it was held that garnishee proceedings would reach assets covered by an unrecorded mortgage made before the debt was incurred for which the mortgagee was garnished, and the following language is used by Mr. Justice CAMPBELL:

"The law does not require previous proceedings to exhaust other remedies. The garnishee law is unconditional upon this subject, and garnishee proceedings will reach the assets if they exist. When the debt is not incurred on the credit of an apparently clear title, which is in fact covered by a secret mortgage, the cases cited hold that there is no right to complain of a subsequent mortgage, without taking some step *which puts the creditor on a different legal footing than that of a quiescent party.* But when a chattel mortgage exists, and is concealed, it is, under the statute, void, for the reason that it produces a false appearance of entire solvency, when, in fact, a person known to have mortgaged his stock would not be as likely to get credit as one who had given no such security, and those who deal with such a debtor are liable to be defrauded by appearances. One who gives credit under such circumstances is necessarily exposed to that mischief, and the law has removed all questions of suspicion or notice by making chattel mortgages void, *at all events,* against creditors who deal with

a debtor so situated. Such creditors are directly within the policy of the statute."

In view of this language, it seems absurd to hold that such a creditor, having possession of the debtor's property under a chattel mortgage, cannot defend against a chattel mortgage absolutely void as to him, unless he goes further, and attaches the property, or takes some legal process, other than the enforcement of his mortgage lien under the power of sale in the mortgage, to get a lien upon it.

In *Root v. Harl*, 62 Mich. 420, Harl & Stevens, merchants doing business at Muir, Mich., as copartners, had made an assignment. Chauncey Rumsey held a mortgage upon their stock. Between the date of this mortgage and its recording, Root & Co. and others gave credit to Harl & Stevens in ignorance of this mortgage. The complainants filed a bill for the appointment of a receiver of the assigned property, and claiming a preference of their debts, contracted as aforesaid in ignorance of the unrecorded mortgage, over the Rumsey mortgage, because it was void under the statute as against them. They had no lien, by legal process or otherwise, upon the property. They might be called "general creditors" of the debtors, except that they stood in a different relation to this mortgage than the others. In delivering the opinion in that case, it was said by Chief Justice CAMPBELL that the *general creditors* could not attack the mortgage, but that Root & Co. could.

"We have no doubt that, under our statutes, any creditors have a right to avoid an unrecorded mortgage who have, during its absence from the record, done anything material which they may be fairly considered to have done on the basis of its non-existence."

This doctrine was also enunciated in *Brown v. Brabb,*

67 Mich. 17, and in *Johnson v. Stellwagen*, Id. (opinion of Mr. Justice CHAMPLIN, at page 14).

It would seem to be settled in *Root v. Harl*, 62 Mich. 420, that, when an assignment is made by a debtor for the benefit of creditors, such creditors as are the defendants in this case can, upon the equity side of the court, attack the unrecorded mortgage, and obtain a preference over it, although they have no lien whatever upon the debtor's property; and that they are not " general creditors," in such a sense that they cannot attack the mortgage without first obtaining a lien, by legal process or otherwise. If this is so, why cannot such a creditor who has obtained a mortgage lien upon the property, and possession under it, defend against a void mortgage, without resorting to legal process against the property? And why should he be compelled to relinquish his possession under such mortgage lien, or pay the amount of a void mortgage? In my opinion, there is no equity or justice in the plaintiff's claim in this case, and no law under which he can enforce it.

I do not think that the fact that the defendants obtained their mortgage after the mortgage of plaintiff's testator was put on file cuts any figure in the case. The mortgage was a security for the payment of the debt, against which the Borgess mortgage had no standing and was void. The rights of defendants were not at all impaired by the taking of this security, but the security gave them a lien upon and possession of the property out of which to make their debt. If, instead of giving this mortgage, the debtors had turned out to them enough of the property to pay the debt, I think no one would seriously contend that the holder of this void mortgage could have demanded the goods of them, and, if the demand was refused, have sued them in trover

and recovered, although at the time the goods were so turned out to defendants the mortgage had been placed of record. I can see no difference in principle in the two cases.

But it is further contended that in taking this mortgage the defendants canceled the old indebtedness, under which they might have claimed the benefit of the statute, and with full knowledge of the Borgess mortgage, and its invalidity as against their debt, not only extended the time of payment of the old indebtedness, but made a new contract, looking towards further dealings with Harris & Karpp, thereby waiving their rights under the statute, and deliberately entering into another contract, to which the statute would not apply to give them preference to the Borgess mortgage; that by this dealing they elected their remedy, and must abide by such election, and cannot sell the property under their mortgage, and also claim as creditors without notice. It does not appear by the record that the taking of this mortgage was a cancellation or extinguishment of the first indebtedness, nor can there be any presumption that the mortgage and notes were taken in payment and extinguishment of the original indebtedness. The presumption would be that they were taken as security, rather than in payment.

The recital in the mortgage, also securing indebtedness that might be created' thereafter, cuts no figure in the case, as there were no subsequent dealings between Harris & Karpp and the defendants. The mortgage recites that it is given in security of an indebtedness of $2,528.-53, which is the exact amount of the indebtedness incurred between the dates of the execution and filing of the Borgess mortgage. Nor does the extention of the time of payment of the indebtedness alter the rights of the defendants as against the Borgess mortgage, because

such extension did not in any way impair the security of Borgess, or hinder him from proceeding to enforce such security the same as if no extension had been granted by defendants in the payment of their debt. Furthermore, part of the debt was made payable on demand, and the mortgage provided that, on default of the payment of any of the indebtedness at the day named for its payment, the entire amount should become due and payable at once; and it would seem that there was really no extension, and the only thing in view and accomplished was the securing of defendants' claim by a mortgage lien which would also give them possession of the property.

We think, under the facts as stipulated, the defendants were entitled to the possession of the property as against the plaintiff, and to make their claim out of it by a sale of the property under such mortgage.

The judgment in favor of the plaintiff is reversed, and a judgment will be entered here in favor of the defendants for the costs of both courts.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred. McGRATH, J., did not sit.