ROWE v. PAGE.

At the April term, 1873, of this court, on the final calling of the docket, and during the absence of the plaintiffs' counsel, the counsel for the defendants withdrew his appearance, and a default was entered, and "judgment *nisi*" entered upon the docket. Neither the plaintiffs nor their counsel had any knowledge that the case was not continued, until a short time previous to the next term. At the next term, on motion of the plaintiffs' counsel, and a statement of these facts, the action was brought forward and judgment rendered for the plaintiffs, on which execution issued, and a demand was duly made within thirty days from the rendition of the judgment upon the receiptor for the property attached upon the original writ. *Held*, that the attachment was not dissolved, even as against third persons.

The receiptor restored the property attached to the debtors, who stored it in the loft of their store, and sold a portion of the same. *Held*, that as between the officer and the debtors the special property acquired by the attachment still subsisted as to the property unsold.

More than four months after the property was attached, a creditors' petition was filed against the debtors in the United States district court, upon which they were adjudged bankrupt, and the unsold portion of the property attached was taken possession of by the assignee. Subsequently the plaintiffs obtained judgment against the bankrupts in the suit upon which the property had been attached, and execution issued thereon and was placed in the hands of an officer, who seasonably demanded it of the receiptor. The assignee sold that portion of the attached property which came into his hands. The officer demanded it of him before the sale. *Held*, that the assignee, standing in the place of the bankrupts, took their property subject to the lien created by the attachment, and that the officer could maintain an action against him for the property attached.

Subsequent to the attachment and prior to the commencement of proceedings in bankruptcy against them, the debtors assigned all their property for the benefit of their creditors under the insolvent laws of this state to one P., who was subsequently appointed assignee in bankruptcy, and he took possession of the same including the property attached, the same being subject to a mortgage which he treated as fraudulent. *Held*, that in a suit by the officer against the assignee, to recover damages for the conversion of said property, it would be no defence to show that the property was subject to a mortgage, unless it was also shown that it was restored to the mortgagees so as to exonerate the officer. Whether he is estopped to deny the fraudulent character of the mortgage, *quære?*

When congress has exercised its power of making a general bankrupt law, and it has gone into operation, the state insolvent laws are suspended.

By sec. 14 of the bankrupt act passed in 1867, it is provided that no action shall be maintained against an assignee in bankruptcy for anything done by him as such assignee, without giving him twenty days' notice of such action. *Held*, that in a suit brought against him, the assignee, by appearance and pleading, waived any exception for want of such notice, and admitted himself rightly in court.

TROVER, by Samuel Rowe against Calvin Page, for two mowing machines and six plows. By consent of the parties the case was tried by the court, before whom the following facts were proved or admitted : February 17, 1872, the firm of Mason & Seavey, copartners in trade at Portsmouth, owned the property, and on that day the plaintiff, who was sheriff of Rockingham county, attached it on a writ in favor of Millard & Curran against Mason & Seavey, and thereupon Mason & Seavey procured Woodbury Seavey to receipt for it to the plaintiff, and it was left in the possession of Mason & Seavey. It was agreed between Mason & Seavey and Woodbury Seavey that the attached property might be stored in the upper loft, being the third story of the store in which Mason & Seavey were carrying on business, and that it and the avails of it, if any, should be sold by Mason & Seavey, and should be kept by them to pay the judgment which might be recovered in said suit. The property was stored in one end of the loft and remained there, except some portions of the mowing machines, which were sold, until August 8, 1872, the store and loft remaining until that day in the possession of Mason & Seavey. In the meantime, parts of each mowing machine had been taken off by Mason & Seavey and sold, but the avails went into their general funds, not being kept to pay the judgment, as agreed with the receiptor.

August 8, 1872, Mason & Seavey assigned all their property to the defendant for the benefit of their creditors, and the defendant immediately took possession of it, including the plows and the pieces which remained of the mowing machines. The defendant at this time knew that the property was subject with other articles to a mortgage given by Mason & Seavey, which mortgage he intended to disregard as fraudulent ; but he had no knowledge of the attachment of the property by the plaintiff.

February 19, 1873, Mason & Seavey, upon the petition of certain creditors, were adjudged bankrupt ; and March 22, 1873, the defendant having been appointed their assignee in bankruptcy, all their property was assigned to him. The defendant, as assignee in bankruptcy, at some time after March 22, 1873, sold that portion of the attached property which came to his hands. The plaintiff duly demanded it of him before the sale.

At the April term of court, 1873, upon the final calling of the docket, Mr. Hatch, who had appeared for the defendants in the action *Mil-*

*lard & Curran* v. *Mason & Seavey*, withdrew his appearance, and the defendants were defaulted, the entry upon the docket being "judgment *nisi;*" but the plaintiffs' counsel was not present, and neither the plaintiffs nor their counsel had any knowledge that the case was not continued until a short time previous to the next October term. At said October term, no execution having been issued, on motion of the plaintiffs' counsel and a statement of these facts, the action was brought forward, and judgment was rendered in favor of Millard & Curran against Mason & Seavey, on which execution was issued, and a demand was duly made within thirty days upon the receiptor for the attached property. The defendant had no knowledge that he was interested in the case until after the close of said October term. The court reserved the question whether the plaintiff is entitled to recover. Judgment is to be rendered for the plaintiff for the amount of the judgment recovered by Millard & Curran against Mason & Seavey, and costs and interest, or for the defendant, as the whole court shall order.

*Goodall* and *Marston*, for the plaintiff.

*Hatch*, for the defendant.

ISAAC W. SMITH, J.    I. Did Millard & Curran's attachment expire in thirty days after the adjournment of the April term?

At the time Mason & Seavey were adjudged bankrupts, Millard & Curran had a lien on certain property of the bankrupts, created by an attachment thereof more than four months prior to the commencement of proceedings in bankruptcy against them, and therefore valid under the bankrupt act of the United States. Was this lien in any way lost? If it was lost by reason of the default entered at the April term, 1873, and of the docket entry of "judgment *nisi*," it was lost without the act, consent, or knowledge of Millard & Curran, or of their counsel.

Property attached is holden for a period of thirty days from the time of rendering a judgment in the action in favor of the plaintiff on which he can take execution. Gen. Stats., ch. 205, sec. 36. Actions are often continued after a default has been entered, for the purpose of saving an attachment. This was formerly necessary where there were prior attachments of the same property. When an action has been defaulted, the plaintiff may take judgment at any time afterwards, as of the term when the default was entered, if the action was not continued for judgment. But if he takes a judgment more than thirty days after the end of the term when the default was entered, his attachment becomes thereby dissolved. But it is held that there are cases where "the court permits actions in which defaults have been entered without continuances to be brought forward upon the docket at subsequent terms, in order to save attachments. Such permission, however, is by no means a matter of course. Unless the application for the purpose be promptly made at the next term, and upon the most satisfactory grounds, the permission will not be granted, or, at least, will not be

granted without so restricting it that it shall not be to the prejudice of third persons." *Hackett* v. *Pickering*, 5 N. H. 19.

In this case the defendants were not defaulted until the last calling of the docket, in the absence of the plaintiffs' counsel, without his knowledge, and after he had left having every reason to suppose the action would be continued. Application to bring the action forward upon the docket was seasonably and promptly made at the next term.

The entry of "judgment *nisi*" is not equivalent to rendering a judgment. It is a minute placed upon the clerk's docket that a judgment might be entered up for the plaintiffs, *unless* some other disposition should be made of the case: generally such disposition would be a continuance. In this case no judgment was entered up, none was rendered, and nothing further was done till the next term, when by order of the court it was brought forward, and judgment rendered for the plaintiffs upon the default. By the statute the lien created by the attachment does not expire till the end of thirty days from the rendition of the judgment, and not from the entry of the default. The case answers perfectly the requirements of *Hackett* v. *Pickering*. A default was entered without a continuance. Application was made promptly at the next term that it be brought forward, and the reasons therefor are most satisfactory. We are of the opinion that the plaintiffs did not lose their attachment, but that the same was preserved, and that the rights of third persons (and there are no third persons here objecting, nor were there any at the time) were not prejudiced by bringing the action forward at the October term, and reinstating it upon the docket for the purpose of rendering judgment therein. Even if this were otherwise as to third persons, so far as Mason & Seavey and their legal representatives are concerned there can be no doubt that the attachment was not lost.

II. What was the effect upon the plaintiffs' attachment, of the restoring of the property attached to the debtors by the receiptor?

By the terms of the receipt it was to be delivered to the officer. The receiptor is not regarded as the mere servant of the officer. His undertaking is a security for the debt to the extent of the property. So long as he retains the possession of the property it may be reclaimed by the officer to satisfy the execution, or to restore it to the debtor, or because he is not satisfied with the responsibility of the receiptor. The receiptor may, if he chooses, restore the property to the debtor, and suffer him to dispose of it, but he thereby deprives himself of the power of returning it to the officer, and the officer is entitled to recover its value of him upon a lawful demand. If the property is thus restored to the debtor and sold by him, the officer cannot then retake it by virtue of the attachment. *Clark* v. *Morse*, 10 N. H. 238; *Carpenter* v. *Cummings*, 40 N. H. 170; *Houston* v. *Blake*, 43 N. H. 117; *Treadwell* v. *Brown*, ib. 292; *Cooper* v. *Newman*, 45 N. H. 342.

Where the receiptor has permitted the debtor to hold and use the property as owner, the attachment is regarded as dissolved so far as that it may be attached by another officer who has no notice that there is a

prior attachment still subsisting. *Whitney* v. *Farwell*, 10 N. H. 11; *Dunklee* v. *Fales*, 5 N. H. 527; *Bayley* v. *White*, 4 Pick. 398. But it is still in force for the security of the first attaching officer until such second attachment be made, and he may again seize the property by virtue of his first attachment, and may take it from the possession of the debtor as well as from the receiptor. *Whitney* v. *Farwell, supra.* As between the sheriff and the debtor, the special property acquired by the seizure of the goods still subsists; and although the sheriff does not remain with them nor place them in the custody of another, yet as to the debtor the officer is deemed to have retained the possession of them, and his lien is regarded as subsisting. *Houston* v. *Clark, supra; Treadwell* v. *Brown, supra.*

An attachment will not be defeated by the fact that possession was not retained by the officer, as against the debtor or any one having notice that the attachment had been made and was still subsisting, and when a purchaser is put upon inquiry, he is to be charged with notice of all such facts as he would have learned by reasonable inquiry. *Cooper* v. *Newman, supra.*

From these authorities it will be seen that the plaintiffs who made this attachment could retake the property from the receiptor or from Mason & Seavey, the debtors, unless it had been attached by some other officer or had been sold to some third person, without notice of the prior attachment, and in case of a conversion of the goods by the debtors, or by a purchaser with notice, the officer could maintain an action therefor against them. Mason & Seavey sold parts of the two mowing machines. As to the parts sold, the lien created by the attachment, as to the purchaser, was thereby lost. As to the unsold portions of the mowing machines and the six plows, the attachment still subsisted, unless affected by the mortgage, assignment, or proceedings in bankruptcy.

III. The reserved case finds that "the defendant intended to regard the mortgage as fraudulent." It is not necessary to inquire whether he is now estopped to deny its fraudulent character. We do not understand that he claims to interpose the mortgage as a defence to this suit. Even if no question were raised as to its validity, it would be no defence to this suit, unless it was shown that the property was restored to the mortgagees so as to exonerate the officer. *Scott* v. *Whittemore*, 27 N. H. 309.

IV. The laws of this state, under which Mason & Seavey assigned all their property to the defendant, August 8, 1872, for the benefit of their creditors, were not in force, but were suspended by the United States bankrupt law, which went into operation June 1, 1867, and have remained suspended since that time. *Chamberlain* v. *Perkins*, 51 N. H. 336. No valid assignment could therefore be made.

V. The remaining question is, whether the proceedings in bankruptcy have vacated the plaintiffs' attachment. By the fourteenth section of the bankrupt act of 1867, the conveyance by the court or register to the assignee of the bankrupts' estate relates back to the commencement

of the proceedings in bankruptcy, and dissolves any attachment on mesne process " made within four months next preceding the commencement of said proceedings." As against the bankrupts, this attachment was not dissolved. Does their assignee stand differently? Under the bankrupt act, by the conveyance to the assignee, all the estate except what is exempted vests by operation of law in the assignee, subject to any liens or other lawful claims thereon.

From these various provisions of the bankrupt act, it is manifest that the assignee is clothed with the same rights that the bankrupt possessed. He is substituted for the bankrupt, stands in his place, succeeds to all his estate and rights, and represents him in all legal proceedings. The statute nowhere confers upon him higher powers or rights, and it would be difficult to conceive how it could transfer to him what the bankrupt did not own or possess, even if congress had attempted so to do.

" The doctrine that an assignee in bankruptcy takes only the title of his assignor is now generally recognized." *Ex parte Dalby,* 1 Low. 433.

The assignee in bankruptcy stands in the place of the bankrupt, and takes only the property which he had, subject to all valid claims, liens, and equities. *Ex parte Dalby ; ex parte Ames,* 1 Low. 565.

" Assignees in bankruptcy [under the act of 1867] stand no better than the bankrupts in respect to the assets, excepting in cases of fraud, or of attachments of less than four months' standing. Where, therefore, the bankrupts, manufacturers of locomotive engines, would have been estopped to deny that a particular engine in their shop was the property of a particular customer, the assignees will be equally estopped.

" Where the manufacturers obtained their pay for an engine on the false representation that it had been finished and delivered to a carrier to be delivered to the customer, and they afterwards built such an engine as had been ordered, and marked it with the customer's name, but had not sent it from the shop at the time of their bankruptcy— *Held,* that the customer had acquired a title to the engine by estoppel, which he might enforce against the assignee in bankruptcy." *Ex parte Rockford, &c. R. R.* 1 Low. 345.

The authorities upon this point are numerous. *Camack v. Bisquay,* 18 Ala. 286 ; *ex parte Newhall, assignee of Brown,* 2 Story 360 ; *Strong v. Clawson,* 5 Gilman 346 ; *Winsor v. McClellan,* 2 Story 492 ; *Mitford v. Mitford,* 9 Ves. 87 ; *Sherrington v. Yates,* 12 M. & W. 855.

It was not necessary that Page should have knowledge or notice of the existence of the attachment. Representing the bankrupts, their knowledge was his knowledge,—constructively, at least. We are of the opinion that, as against the assignee of Mason & Seavey, the attachment was not dissolved.

By the fourteenth section of the bankrupt act of 1867, it is provided that " no person shall be entitled to maintain an action against an assignee in bankruptcy for anything done by him as such assignee, without previously giving him twenty days' notice of such action, specifying the cause thereof, to the end that such assignee may have an opportunity of tendering amends, should he see fit to do so."

The defendant has not objected that this provision of the statute has not been observed. If it has not been, and he had seasonably objected, this action could not be maintained. It may be that the requisite notice was given, but the case is silent upon that point. But however that may be, we think it is now too late to make the objection. A defendant, by waiving exception, admits himself rightly in court. By his appearance and plea, he admits the jurisdiction of the court over him as a party. If the jurisdiction is admitted, the judgment cannot be questioned except for want of jurisdiction of the subject-matter. It is well settled that a party who desires to take advantage of any defect in the proceedings by which he was brought into court, must make his exception by plea in abatement, or a proper motion at the earliest stage of the proceedings, or he will be deemed to have waived it, and to have closed his own mouth against objecting afterwards. *Nichols* v. *Smith*, 26 N. H. 301, and authorities there cited.

According to these views, the plaintiff is entitled to judgment for the amount of the judgment recovered by Millard & Curran against Mason & Seavey, and interest and costs, as provided by the reserved case.

By the provisions of the bankrupt act of 1867, sec. 1, original jurisdiction (which is not necessarily exclusive) is conferred upon the United States district court in controversies in regard to the collection of all the assets of the bankrupt and to the ascertainment and liquidation of the liens thereon. The assignee is an officer of the bankruptcy court, subject to its orders in regard to the disposition of the assets in his hands and liable to punishment for disobedience. Both parties appear in court here and raise no objection to the jurisdiction of this court, and therefore we have not considered any question of jurisdiction. But, in order that there may be no conflict between the state and federal courts, we think execution should be stayed till the further order of this court, and the parties may consider whether any application to the United States district court for this district is necessary, in the premises. When the courts of the United States sitting in bankruptcy abstain from ascertaining liens and providing for their satisfaction out of the property or the proceeds of a sale thereof, the only way of enforcing such liens is by suit in the state courts. *Clifton* v. *Foster*, 103 Mass. 233.

The state courts are bound to observe the requirements of the bankrupt act, and the federal courts are equally bound to respect the liens which are protected by said act.

Without intending to establish a settled rule or system of practice on the subject, but as a matter of discretion in this case, we think the course suggested is the proper one to be pursued here.

*Judgment for the plaintiff, and execution stayed.*