## PHILIP E. MARTIN

*v.*

## MATTHEW BOWEN et al.

1. Complainant endorsed a promissory note for the accommodation of C. & D., who at the same time lodged with him their title deed to a lot of land, with a written memorandum signed by them to the effect that he should hold it as security for his endorsement. Afterward C. & D. failed and made a general assignment for the benefit of their creditors to defendant, and complainant was obliged to pay the note.—*Held*, complainant had an equitable charge on the land for the amount so paid, enforceable against the defendant. *Van Doren* v. *Todd, 2 Gr. Ch. 397*, followed; *Currie* v. *Knight, 7 Stew. Eq. 485*, and *Receiver* v. *Spielmann, 5 Dick. Ch. Rep. 120*, distinguished.

2. The holder of an unrecorded equitable charge upon land given for a full consideration moving at the date of its creation is entitled to priority over a subsequent legal mortgage given to secure a prior indebtedness.

---

Final hearing on pleadings and oral proofs.

The object of this bill is to establish an equitable lien on a tract of land put upon it by the then owners, Messrs. Clark & Demarest, in favor of the complainant, to secure him for the endorsement of their note for $1,000.

The equity rests upon a writing given by Clark & Demarest to the complainant, dated the 22d day of April, 1892, and is in these words:

"For value received the undersigned have this day delivered to Philip E. Martin a certain deed dated August 7th, 1891, and recorded in the office of the register of Hudson county, New Jersey, September 17th, 1891, in Book 538 of

Deeds, page 54 &c. This deed to be held by Philip E. Martin as security for ·the payment of a certain note dated this day for the sum of one thousand ·dollars, which note said Martin has endorsed as accommodation for the undersigned. It is understood and agreed that if the said note be paid at maturity ·by the undersigned then the said deed is to be redelivered to the undersigned by said Martin, but should said note not be paid, then said Martin shall hold said deed to answer for any money he may have to pay on said note. The undersigned hereby agree not to sell, assign, transfer or in any manner dispose ·of the property mentioned in said deed until said deed shall be redelivered to ·them by said Martin.

                                        " BERTRAND L. CLARK,
                                        " JOHN Z. DEMAREST."

The deed here mentioned was one in which Clark & Demarest were named as grantees.

The note was endorsed by the complainant, and Clark & Demarest got it discounted and received the proceeds. Subse-·quently they substituted with the complainant for the deed mentioned in this agreement another deed, likewise made to them, ·of land in Jersey City, which is particularly described in the bill, upon an agreement that the land described in the second deed should be held as security by the complainant in the same manner and to the same extent as that described in the first deed. Afterwards, on the 27th of June, 1892, Clark & Demarest procured the endorsement of the complainant upon a new note of ·$500, which was used in part payment of the note for $1,000 mentioned in the writing above set forth, and that note at maturity went to protest, and the complainant was obliged to pay it, ·and did pay it. Three days after the endorsement of the $500 note Clark & Demarest made a general assignment for the bene-·fit of their creditors, under the Assignment act, to the defendant Bowen.

*Mr. John A. Dennin,* for the complainant.

*Mr. James R. Bowen,* for the defendants.

PITNEY, V. C.

The questions to be solved are—*first,* whether or ᴸ ᵗ what ·transpired between the complainant and Clark & Demarest, in

connection with the writing signed by them, gave the complainant a right in equity to a specific lien on the land described in the deed last mentioned; and, if that is resolved in favor of the complainant, then, *second*, whether that lien is good against the defendant as assignee of Clark & Demarest.

*First.* I think it sufficiently clear that the agreement in question amounted to an equitable mortgage, or an agreement to give a mortgage. It does, indeed, speak only of the deed as being security for the payment of the note; but there is an agreement not to sell, assign or transfer the property mentioned in the deed, and an agreement that Martin shall hold the deed to secure him for any money he may have to pay on the note, so that, it seems to me, in order to give proper force and effect to the agreement it must be construed as one pledging the land to the complainant. *1 Jones Mort. § 163 et seq.; Griffin* v. *Griffin, 3 C. E. Gr. 104, 106; Brewer* v. *Marshall, 4 C. E. Gr. 537, 542; Robinson* v. *Urquhart, 1 Beas. 515, 523.*

No question under the statute of frauds was raised either by the answer or in argument.

*Second.* The second question, viz., whether or not that agreement, never having been recorded, is valid and binding against the assignee in this case, is more troublesome.

The right is purely equitable. Complainant holds what is known as a pure equity in the land in question. This is simply a right to come into a court of equity and ask it to appropriate the land in question to the payment of the debt for which it was pledged.

The right in this case, by reason of its being founded upon a full consideration moving at the date of its creation, holds the highest rank among equities of that class, and its holder occupies the commanding position of a *bona fide* purchaser *for value* paid. Such an equity is superior to a similar pledge given to secure simply a prior debt, without any extension of time or surrender of any right, for the reason that the latter pledgee parted with nothing on the strength of it. Such superior strength and merit would also, probably, give it preference over such less meritorious equity, although the latter might be prior in time. It would

prevail over a subsequent purchaser" by contract only, without notice, although the purchase-price be paid, because the equity of each would be equal, and the pledge would be prior in time; but if the subsequent purchaser, in addition to paying the price, got the legal title, he would, by its strength, prevail. But if he procured the legal title without paying the price, he would not prevail. These rules are familiar and fundamental.

The defendant assignee paid no consideration for his conveyance, and, of course, his title, standing by itself, for that reason cannot prevail over the complainant's equity. The question is how far it is strengthened by the fact that it is held in trust for the creditors of the grantor.

The question is sufficiently simple. None of the creditors lost a single right by the assignment. The right to sue upon their respective debts was not abridged in the least. Nothing was taken from them, and they give up nothing, unless they choose to come in under the assignment. Before the assignment they had no specific equity or interest of any sort in their debtor's property. This rule goes so far as to hold that, in the absence of any statutory regulation, an ordinary judgment creditor does not, by reason of his judgment, acquire such an interest in his debtor's property as to give him precedence over a prior equity of the character of that here in question. *2 Pom. Eq. Jur.* §§ *684, 719–721.* Here the best position in which, in my judgment, for reasons presently to be stated, the circumstances place the creditors, is that of mortgagees holding under a legal mortgage duly recorded, but given to secure a prior indebtedness; and, standing in that position, it seems to me to be settled in this state, and by the weight of authority elsewhere, that their right is subordinate to that of the complainant.

The authorities in this state cited and relied upon by the complainant are *Van Doren* v. *Todd, 2 Gr. Ch. 397,* decided in 1836 by Master Van Arsdale, sitting for the chancellor, and *Pancoast* v. *Duval, 11 C. E. Gr. 445,* and *Shaw* v. *Glen, 10 Stew. Eq. 32,* both decided by Chancellor Runyon.

*Van Doren* v. *Todd* was a contest between a holder of a vendor's lien and an assignee for the benefit of creditors; and it was

Martin v. Bowen.

held that the equity of the vendor's lien was superior to that of the assignment.

The case is precisely in point, and, having been decided by a lawyer of great eminence, I might rest this case upon it; but the defendant having in his brief contended that the authority of this case and others in line with it has been shaken by a very recent case in this court, I will proceed to examine the other cases.

*Pancoast* v. *Duval*, decided in 1875, held that a conveyance of land as security for a prior indebtedness from the grantor to the grantee did not take precedence over a prior unrecorded mortgage given by the grantor.

In *Shaw* v. *Glen*, decided in 1883, the owner of certain goods and chattels had executed a mortgage on them to the complainants, in good faith and for full consideration in a prior indebtedness, but, by oversight, the mortgage was not recorded in the proper county. Subsequently, the mortgagor made an assignment for the benefit of his creditors, to the defendant, Glen. The bill was filed, as here, to foreclose the mortgage. The chancellor held that the complainant was entitled to the benefit of his mortgage. He uses this language (at *p. 34*): "The mortgage was given in good faith in all respects. The complainant's debt was an honest one, and the mortgagor meant to secure its payment by the mortgage, in consideration of the time given him to pay it." And (at *p. 35*), after holding that the mortgage was invalid as against judgment creditors by reason of its being recorded in the wrong county, he says: "But the mortgage was clearly valid as against the mortgagor when he made the assignment, notwithstanding it had not been recorded according to law. *National Bank* v. *Sprague, 5 C. E. Gr. 13*. And the assignee took his title to the property *subject to the equities to which it was subject in the hands of his assignor*. Such is the rule as to assignees in bankruptcy. Such an assignee is not bound by the fraudulent conveyances of his assignor (*Pillsbury* v. *Kingon, 6 Stew. Eq. 287*), but in cases unaffected by fraud, he is bound by the equities to which the property assigned was liable when it came to his hands from his assignor. *Mitford*

Martin *v.* Bowen.

v. *Mitford, 9 Ves. 87 ; Winsor* v. *McLellan, 2 Story 492 ; Re Gregg, 3 B. R. 529.* And this rule has been repeatedly applied in mortgage cases like the present. *Re Griffiths, 3 B. R. 732 ; Potter* v. *Coggeshall, 4 B. R. 73 ; Stewart* v. *Platt, 101 U. S. 731.* The same just rule is, on every principle, obviously applicable to assignees under the Assignment act. The failure to record the mortgage does not render it invalid as against the defendant."

Now, as pointed out by me in *Milton* v. *Boyd, 4 Dick. Ch. Rep. 142, 147, 148,* the fourth section of our Chattel Mortgage act is an exact rescript of the corresponding section of the original Chattel Mortgage act of 1864 and also of the act of New York of 1833.

The New York act came under consideration in *Van Heusen* v. *Radcliff, 17 N. Y. 580,* in 1858. There the contest, as in *Shaw* v. *Glen,* was between the holder of an unrecorded chattel mortgage and the assignee of the mortgagor under a voluntary assignment for the benefit of creditors ; and it was held, first by the supreme court and afterwards by the court of appeals, in an opinion by Judge Denio, that the assignee took the property subject to the lien of the chattel mortgage. At *p. 582* he says : "The principal point insisted on in the brief of the counsel for the defendant is *that he is to be considered as representing creditors* or as a purchaser in good faith, and that he can therefore avoid the mortgage because it was not filed pursuant to the act of 1833 (*ch. 279*)." This is the New York Chattel Mortgage act. At the bottom of *p. 583* the learned judge continues : "When the act respecting the filing of chattel mortgages was passed, the term *bona fide* purchaser had acquired a settled meaning, which did not include a person whose purchase was on account of an existing debt and who parted with no property or right to obtain his conveyance. The case of a conveyance of a debtor's property to trustees, to enable him to make preferences among his creditors, does not stand on a better footing than a transfer to a single creditor as security for his debt. From the nature of the case, the creditors part with nothing. They are not necessarily or usually consulted. They take precisely what

the conveyance gives them, and they part with no existing rights. The property is subject to the same equities in the hands of the trustees which existed against it immediately before the execution of the assignment.

"When a conveyance is said to be void against creditors, the reference is to such parties when clothed with their judgments and executions or such other titles as the law has provided for the collection of debts. *The beneficiaries, under the voluntary assignment to the defendant, are not in a condition to claim the rights of creditors or to question the prior disposition of their debtor which he could not himself have avoided.*"

In *Stewart* v. *Platt, 101 U. S. 731,* cited in *Shaw* v. *Glen,* the contest was precisely like that in *Shaw* v. *Glen,* between the holder of a chattel mortgage recorded in the wrong county and the assignee in bankruptcy of the mortgagors; and it was held that the mortgage must prevail. Mr. Justice Harlan, in delivering the judgment of the court, says (at *p. 738*), quoting from the opinion of the same court, in the previous case of *Yeatman* v. *Savings Institution, 95 U. S. 764:* "Except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and *except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void,* the assignee takes the title subject to all equities, liens or encumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt. *Brown* v. *Heathcote, 1 Atk. 160; Mitchell* v. *Winslow, 2 Story 630; Gibson* v. *Warden, 14 Wall. 244; Cook* v. *Tullis, 18 Wall. 332; Donaldson, Assignee,* v. *Farwell, 93 U. S. 631; Jerome* v. *McCarter, 94 U. S. 734.* He takes the property in the same 'plight and condition' that the bankrupt held it. *Winsor* v. *McLellan, 2 Story 492.*"

Besides these cases of chattel mortgages, there is in New York the case of *Re Howe, 1 Paige 125.* The question there was, as here, between an equitable mortgagee of land and the assignee of the mortgagor for the benefit of his general creditors; and Chancellor Walworth, after an elaborate examination of the

authorities, held the equitable mortgagee entitled to preference,. not only over the assignee but over judgment creditors. This case is also precisely in point.

The principle underlying these cases is supported by the great. weight of authority in this country and elsewhere. *2 Pom. Eq.. Jur.* §§ *745, 748, 749; 1 Jones Mort.* § *458.*

But it was urged by the counsel of the defendant that the authority of *Shaw* v. *Glen* has been shaken and the case itself distinctly overruled by recent cases in this court, and it remains to consider how far that contention is well founded. The first case relied upon is *Currie* v. *Knight, 7 Stew. Eq. 485,* decided by Vice-Chancellor Van Fleet in 1881, two years before *Shaw* v. *Glen.* That was a contest between the creditors of an insolvent estate and the holder of a chattel mortgage given by the decedent, but not recorded until several months after his death; and it was held that the mortgage was void as against such creditors. The decision was put upon the ground that the statute gave the creditors a lien upon all the property of the debtor and that the Chattel Mortgage act declared that a mortgage on chattels not accompanied by immediate delivery and not filed as directed by the statute &c. should be absolutely void as to creditors.

If there be any lack of harmony between that case and *Shaw* v. *Glen*, the latter, having been decided after *Currie* v. *Knight,* must be held to have overruled it.

The next case in the same line is *Hopper* v. *Lovejoy, 2 Dick.. Ch. Rep. 573,* decided in this court by Master Stevens. He there held that a chattel mortgage, though actually recorded in time, was defectively acknowledged, and therefore not properly recorded, and so void as against the receiver of an insolvent corporation appointed by this court, while a mortgage of land with the same defect he held valid. He puts his decision upon the difference in the language between the act concerning mortgages of land and that concerning mortgages of chattels. The former act declares unrecorded mortgages of land void as against subsequent *judgment* creditors &c. not having notice thereof, while the Chattel Mortgage act declares chattel mortgages not recorded and not having the proper affidavit annexed and unaccompanied

Martin *v.* Bowen.

by change of possession of the chattels &c., absolutely void as to creditors &c. generally, without any qualification. The decree made in accordance with this opinion was carried to the court of errors and appeals, and they held the advisory master wrong in his conclusions as to the proper execution and record of the mortgages, and established the chattel mortgage as a lien as against the receiver, on the ground that it was properly executed and recorded; so that the question whether the learned master was correct in his judgment upon the effect of the Chattel Mortgage act was not passed upon by that court. But, upon the hypothesis that the mortgage of land there under consideration was not entitled to record, and for the reason that its record was not constructive notice under the statute, the learned master's decision is precisely in point in favor of the complainant here.

The next case, and the one principally relied upon by the defendant, is *Receiver* v. *Spielmann*, decided by Vice-Chancellor Van Fleet in 1892, and reported in *5 Dick. Ch. Rep. 120*, and, at the time of this writing, under review by the court of errors and appeals.* That, like *Hopper* v. *Lovejoy*, was a contest between the holder of a chattel mortgage and the receiver of an insolvent corporation appointed by this court. The mortgage was properly recorded, but the affidavit annexed was defective, and the vice-chancellor held it void, as against the receiver, upon the same ground relied upon in *Curry* v. *Knight*, and by the learned advisory master in *Hopper* v. *Lovejoy*. The learned vice-chancellor held that the effect of the statute respecting chattel mortgages was to reduce a chattel mortgage not having the necessary qualifications to the level of fraudulent conveyances, and to render it absolutely void as to all creditors who, for any reason, had a footing in a court of justice to question it; and he declared that the position which he arrived at was inconsistent with *Shaw* v. *Glen*. This conclusion seems to exclude all consideration of the strength of the mortgagee's position, tested by equitable standards, and to sweep away the lien of one who has actually advanced his money on the strength of the chattel mortgage, as

---

* Since affirmed.—REP.

well as that of one who, as in *Shaw* v. *Glen,* took it as security for a prior indebtedness.

In answer to this position, the counsel for complainant takes the ground that there is a clear distinction between the position of an assignee, such as the defendant is here, claiming by virtue of a voluntary assignment, and the receiver of an insolvent corporation appointed by the chancellor, such as was dealt with in the cases of *Hopper* v. *Lovejoy* and *Receiver* v. *Spielmann.* His point is : "A receiver does not claim title through the insolvent, but as the direct representative of the creditors, and occupies the same position as a judgment creditor would as against the property of his debtor."

The position is entitled to grave consideration.

The action of this court in dealing with insolvent corporations is statutory and peculiar. It hears and determines the issue of solvency or insolvency upon evidence in a summary manner, and renders a judgment upon it. If the judgment be that the corporation is insolvent, such judgment is, in effect, under the statute, a judgment in favor of all the creditors, and fixes a lien at once upon all its assets in favor of them, and the appointment of a receiver is, in effect, the execution of that judgment. The taking possession by the receiver is in the nature of a levy under an execution issued out of this court upon a judgment in favor of all the creditors. *High Rec.* § *2.* Such judgment and execution are *in invitum,* and thereby all creditors are debarred from having any common-law remedy.

These characteristics are in many respects in marked contrast with those of an assignment for the benefit of creditors. But I do not deem it necessary to express any opinion upon the question so raised. The difference above pointed out between the language of our statute respecting mortgages of land and that respecting chattel mortgages is, in my opinion, quite sufficient to distinguish the present case from both *Shaw* v. *Glen* and *Receiver* v. *Spielmann.*

The rule that the subsequent legal title to land, in order to prevail over a prior equitable title, must not only have been acquired without notice of the prior equity, but must be founded upon a

consideration of value moving presently from the grantee, was distinctly recognized by Chief-Justice Green in *Allaire* v. *Hartshorne, 1 Zab. 665* (at bottom of *p. 668*), and again by Chancellor Zabriskie in *Mingus* v. *Condit, 8 C. E. Gr. 313* (at *p. 315*), where he in effect overrules his dictum apparently to the contrary in *Uhler* v. *Semple, 5 C. E. Gr. 288* (at *p. 293*). What was said by Vice-Chancellor Van Fleet in *Sweeney* v. *Williams, 9 Stew. Eq. 459,* was based upon Chancellor Zabriskie's dictum in *Uhler* v. *Semple,* and Chancellor Runyon's decision in *Traphagen* v. *Hand, 9 Stew. Eq. 384,* which was not supported by the court of errors and appeals when that cause was there considered. And the same remark applies to what was said by the same learned judge in *Butterfield* v. *Okie, 9 Stew. Eq. 482.* I think that the authorities clearly hold that in *Butterfield* v. *Okie* the vendor's lien would have prevailed against a mortgage given by the vendee to secure a prior debt owing by herself, but not against a mortgage given to secure money loaned and advanced at its date.

The decision in *De Witt* v. *Van Sickle, 2 Stew. Eq. 209,* is in line with the rule as I have stated it; and the language of Mr. Justice Van Syckel in *Wheeler* v. *Kirtland, 9 C. E. Gr. 552* (at *p. 555*), speaking for the court of errors and appeals, is also significant: "An equitable mortgage for a precedent debt has no equity superior to that of a valid subsequent judgment at law. Between such contestants, the first perfected legal lien should prevail. *The rule is otherwise with regard to bona fide purchasers or equitable mortgagees, where the consideration of the mortgage is paid at the time it is given. Equity, in the latter case, regards the equitable mortgagee as a bona fide purchaser.*" And this is in accordance with the rule laid down by Professor Pomeroy.

An assignment for the general benefit of creditors is a voluntary act, and creates a trust pure and simple in favor of the creditors of the assignor. Upon it, however, the statute has imposed several conditions—*First.* It must include all the debtor's property. *Second.* It must be for the equal benefit of all his creditors. *Third.* The assignee must give bond and make report

Martin *v.* Bowen.

to the orphans court, and the statute has provided a simple and convenient mode by which the assignee may be called upon to account in that court.

But all these provisions do not alter the intrinsic character of the transaction. It still remains a voluntary trust, and, but for the jurisdiction conferred upon the orphans court, this court, in the exercise of its original jurisdiction over trusts and trustees, would compel the assignee to do precisely what he is compelled to do by the statute through the orphans court.

Bearing in mind, then, the essential character of such an assignment, I fail to see how and why any of these statutory regulations can be construed to divest the assignor's property of any equities which may have been attached to and fixed upon it at the date of the assignment, or to advance the creditors to the position of judgment creditors. Indeed, the language of the thirteenth section of the Assignment act indicates the contrary :

"13. That every assignee as aforesaid shall have as full power and authority to dispose of all estate, real and personal, assigned, *as the said debtor or debtors had at the time of the assignment,* and to sue for and recover in the proper name of such assignee or assignees, everything belonging or appertaining to said estate, real or personal, of said debtor or debtors, and shall have full power and authority to refer to arbitration, and settle and compound, and to agree with any person concerning the same, and to redeem all mortgages and conditional contracts, and generally to act and do whatsoever the said debtor or debtors might have lawfully done in the premises."

The case of *Pillsbury* v. *Kingon, 6 Stew. Eq. 287,* is supposed to declare that such is the effect of the Assignment act. I do not understand that the learned judge who delivered the opinion of the court of errors and appeals in that case advanced any such doctrine, or that it is the necessary result of the grounds upon which he based his decision. He put it, as I understand the opinion, upon the ground that the assignee represents the creditors, and because he represents the creditors, and the conveyance is made to him in trust for the creditors, the title in him is no longer subject to the rule that the fraudulent grant is good as against the fraudulent grantor and his assigns. That rule is founded upon the policy of the law, and where the policy stops

the rule must stop. Its object is to discourage debtors from making fraudulent conveyances of land upon a secret trust for their own benefit, and to prevent them, so far as possible, from enjoying the fruits of such conveyance after it shall have been made. The basic principle of *Pillsbury* v. *Kingon* seems to me to be that, while the fraudulent grantor may not reclaim the subject of the grant for his own benefit, and in order to enjoy the fruits of the fraud, he may still convey it to or for the use and benefit of his creditors, since, as to them, the fraudulent conveyance is void. And it is on that principle that, if the creditor obtains judgment against the debtor, and levies on the land which he has fraudulently conveyed away, and sells it as the property of the debtor, he acquires a title paramount to that of the fraudulent grantee. For, it is to be observed, that the statute regulating sales of land by the sheriff under execution declares that

" the conveyance shall transfer to and vest in the purchaser as good and perfect an estate to the premises as the person against whom the writ issued was seized of or entitled to at or before the judgment, as fully to all intents and purposes as if such person [that is, the execution judgment debtor] had sold the said lands, tenements and hereditaments to such purchaser and had received the consideration money and sealed and delivered a deed for the same."

When, therefore, a debtor, who has made a fraudulent conveyance of land, repents and makes a subsequent conveyance of it to a creditor, that creditor is entitled to the benefit of the clause of the statute of frauds which declares that a prior fraudulent conveyance is void as to him.

Thus it was held by the court of errors and appeals, in *Bank* v. *Cummings, 12 Stew. Eq. 577*, that a fraudulent grantor might take back to himself a mortgage from the fraudulent grantee, to be used by him, the grantor, in securing a meritorious debt which he owed, and in so doing the court expressly overruled the result of the decision of Chancellor Zabriskie in *Mingus* v. *Condit, 8 C. E. Gr. 313.*

This decision, in *Bank* v. *Cummings*, seems to me to be in the same line with that of *Pillsbury* v. *Kingon*.

The earlier case of *Haston* v. *Castner, 4 Stew. Eq. 697*, in the

Martin v. Bowen.

court of errors and appeals, held that a creditor of a deceased
debtor whose claim has been proven and admitted by the per-
sonal representative, has a standing in this court to call in ques-
tion a fraudulent conveyance made by his debtor.   This decision
was put on the ground that all of the debts of a decedent are
made a lien upon his lands by force of the statute regulating the
estates of such, and that the debt was sufficiently ascertained by
its proof' to and recognition by the personal representative.   We
may here learn why, in general, a judgment is requisite in order
to enable a creditor to attack a previous conveyance by his
debtor.   It is because the existence of his debt must be in some
way ascertained and must be fastened upon the land.   *Haston*
v. *Castner* held that where those two elements were present, a
creditor had the proper footing to attack a fraudulent convey-
ance, and that it was not necessary that there should be a com-
mon-law judgment to produce them.   So in *Pillsbury* v. *Kingon*,
the fact that there were numerous debts was shown, and those
debts were fastened upon the land by the debtor's own act in
making the assignment; and these elements give the assignee
representing the creditors the necessary footing.

But, in my judgment, neither *Haston* v. *Castner* nor *Pills-
bury* v. *Kingon* raised the creditor to the dignity and gave him
all the statutory benefits of a judgment creditor.

The case in hand does not suggest considerations which should
induce a court of equity to desire it to invest the creditors with
the privileges, under the recording act, of judgment creditors.
Viewed from a purely equitable standpoint, the merits of the
complainant are higher than those of the creditors; and to give
the creditors the position of judgment creditors would be to give
them a higher standing than their equity deserves, for it must
be observed that the statute makes an unrecorded mortgage
of land void as against judgment creditors and *bona fide* pur-
chasers and mortgagees not having notice of it.   Now, in order
to enable subsequent purchasers and mortgagees to take advan-
tage of that statute as against a person situate as is the com-
plainant here, and who has, as was said by Mr. Justice Van Syckel
in *Wheeler* v. *Kirtland*, the character of a *bona fide* purchaser

30

Martin *v.* Bowen.

for value, it is well settled that they must have paid or advanced their money upon the strength of the apparent title as well as without notice of the unrecorded equity. If they take either the conveyance or the mortgage as security merely for a previous debt, and give up nothing in the way of present right of suit or other security, they are not, upon well-settled principles, entitled to take advantage of this provision of the act as against such an equity. On the other hand, the judgment creditor has no such restriction placed upon his right. His judgment is given preference by the statute, without regard to when or under what circumstances the debt upon which it is founded had its rise, and in utter disregard of any equitable considerations. This partiality to a judgment creditor does not commend itself to a court of equity. Further, it is by no means clear, under the authorities, that these creditors, if they were advanced to the position of judgment creditors, would be entitled, merely as such, to override the complainant's equity. The writing upon which his equitable charge is based is not a deed and is not capable of being recorded. The language of the act is: *"Every deed of mortgage or conveyance in nature of a mortgage of or for any lands &c. shall be void and of no effect against subsequent judgment creditors"* &c.; and it may well be doubted whether the court ought to extend that provision to a charge, such as the complainant has here, founded upon money actually advanced on the strength of the title. But I do not find it necessary to decide this question.

I am of the opinion that the complainant is entitled to relief.