The bill is to foreclose seven mortgages for $7,000 each. conveying seven adjoining houses and lots, given by Plainfield Spanish Homes Building Company, Incorporated, to Manhattan-Jersey Mortgage Corporation, April 19th, 1929, and assigned to the complainant. The answering defendants are David M. Barad and his three associates. The building company purchased a tract of land from them and gave in return a purchase-money mortgage upon which there is now due $30,000. The tract was divided into fourteen lots, and dwelling houses were erected upon thirteen of them. The purchase-money mortgage provided for its subordination to a mortgage of not more than $7,000 on each house and lot *Page 392 
and provided further for a second mortgage to Barad et al., on each house for a proportionate share of the $30,000 mortgage, and to take its place. Six of the houses were mortgaged for $7,000 each and the purchase-money mortgage was subordinated, and upon the making of the seven mortgages now under foreclosure, it was subordinated to them. Later when the building company was unable to carry on, it conveyed the thirteen houses and lots to Barad et al., subject to the mortgages and they are in possession, either under their mortgage or the deed; they claim the deed was not accepted though delivered, and they have it. The Manhattan-Jersey Mortgage Corporation had agreed to finance the seven mortgages, whereupon Barad et al., subordinated their mortgage. The mortgage company was not presently in funds and the building company, pressed for money to finish the houses, turned to the complainant who advanced $15,000 temporarily to or through the mortgage company on the security of the mortgages and the mortgage company assigned to him the mortgages, he agreeing to reassign them within two months upon the repayment; the mortgage company holding out promise to finance the mortgages by that time. It defaulted. More money was needed and the complainant advanced an additional $25,000 in the same manner and the mortgage company gave him an absolute assignment of the mortgages. Later the complainant advanced another $6,000 direct to the building company and with that the company's creditors were satisfied. The first two sums were transmitted through the mortgage company by the complainant's checks which were handed to and endorsed and delivered by the mortgage company to the building company which cashed them.
The defendants make the point that the mortgage company had nothing to assign, that the mortgages were without life and consequently that the assignments were nugatory. The point is unsubstantial. It is a matter of no consequence whether the complainant made the advances to the mortgage company and it paid the money over to the building company or advanced it directly to the building company on the *Page 393 
security of the mortgages. In either case the mortgages took on legal vitality the moment the consideration was paid. The form in which the security was given is unimportant. Assuming that the mortgages were impotent in the hands of the mortgage company, it was the privilege of the mortgagor to vitalize them. Even a paid and satisfied mortgage may be revived and repledged by the mortgagor. Underhill v. Atwater, 22 N.J. Eq. 16, 599; Martin
v. Bowen, 51 N.J. Eq. 452.
After the second advancement of $25,000 was made, $12,500 was returned to the complainant. The defendants claim that $18,600 was returned and they rest this on the fact that after complainant's check for $25,000 was deposited to the credit of the building company, the members of that company withdrew $18,600, in three checks of $6,200 each, one to each, and that the cash was returned to the complainant. There is some mystery and a lot of recrimination and in all likelihood there was corrupt purpose in the transaction, but the complainant was not a party to it. He says he got but $12,500 and that has not been successfully controverted. Two of the members have had a falling-out with the third, a brother-in-law of the complainant, evidently over the spoils, and their antagonism and bitterness and disregard for the oath has resulted in an irreconcilable conflict of testimony and made it impossible, after again carefully reviewing it, to decide with any degree of confidence where the `truth lies. The burden is on the defendants to prove payment and that burden they have not sustained.
The complainant was paid a bonus on the first two advancements and was promised one on the third. The defense of usury is inadmissible. The building company could not plead it; the defendants cannot. Felin v. Arrow Motor Machine Co., 96 N.J. Eq. 44; Commercial Funding Corporation v. Melroy ConstructionCo., 106 N.J. Eq. 11.
It is claimed that the assignments from the mortgage company to the complainant are void because they were executed by a vice-president who was without authority. The vice-president *Page 394 
was the general manager in charge of the business of the concern and was especially authorized by the board of directors to execute assignments of mortgage. The business of the company was buying and selling mortgages and it was within the scope of his authority. But the complainant's right does not alone depend upon the assignments. Their pledge by the building company to him carried the security.
The next contention is that the subordination agreement was personal to the mortgage company, because it does not in terms run to its assigns. The subordination itself is found in the covenant in the defendants' mortgage which was automatic upon the thirteen mortgages coming into being. The deed of subordination is merely the formal legal expression of the covenant, reversing the order of priority and fixing a new status for the mortgage liens for the public record. The covenant of subordination is annexed to the junior mortgage liens and runs to the holder of the mortgages.
The defendants' counter-claim to void the subordination agreement, sets up that it was obtained by fraud, first, in that the covenant in the defendants' mortgage stipulated for a subordination to mortgages to be made to a "title company or bank of the State of New Jersey," and that the mortgage company was fraudulently represented to be a title company; and second, in that the agreement was delivered conditionally and was to have effect as a delivered document only upon the payment of $1,625, which was not paid. There is no proof whatever of any representation as to the qualifications of the mortgage company. In fact, there was no inquiry, nor was there any interest displayed, except that the mortgage company would furnish the money on the security of the mortgages and the subordination; and the defendants acquiesced. It was a thing immaterial and the limitation in the covenant was waived. Barad et al. are also estopped, for they knew that the complainant had furnished some and was to furnish more of the money to finish the houses to the advantage of their second mortgage. At to the conditional delivery of the subordination agreement: The defendants' mortgage provided *Page 395 
that the proportional second mortgages they were to take on each of the thirteen houses, in place of their $30,000 mortgage, were to run for three years and to be payable in quarter annual installments of $125 each. Later it was agreed that the installment payments, each aggregating $1,625, should start June 15th, 1929, whether the second mortgages were then executed or not. The subordination agreement was given in April, two months before any installments came due, after the building company had earned it by complying with all the requirements, and a conditional delivery upon the payment of an installment not then due, was without legal warrant and a promise to pay if made, was without consideration. Under the terms of the defendants' covenant, the building company was rightfully entitled to the subordination and the exaction of a further consideration was oppressive. The promise to pay $1,625 for the subordination is as strenuously denied as it is asserted and the circumstances strongly favor the denial.
There is also objection, that the subordination agreement is indefinite. It is literally incorrect; it refers to the complainant's mortgages as of a wrong date, and in the singular instead of plural noun, and there is transposition of the names of the parties to the instrument and confusion in postponing complainant's (instead of defendants') mortgage to complainant's mortgages. The recitals, however, are unambiguous; they straighten out the tangles. Besides, equity would enforce the covenant to postpone were this instrument non-existent.
The most vain of all the defenses upon which a dismissal of the bill is sought is, that the complainant corruptly seeks to recover $49,000, the full amount of the seven mortgages, with intent to cheat the defendants by foreclosing them of their security. He asks only for the money due him. However futile as a defense, the gesture suggests that upon a proper case the complainant might have been entitled to recover the full amount of the seven mortgages — the amount of his advances to reimburse himself and the balance to the *Page 396 
use of the building company. The fact that the defendants took a deed for the thirteen lots subject to the $91,000 of mortgages strengthens the suggestion. The original scheme of the parties was, that the tract should be developed by the building company and that the defendants should ultimately be paid by the proportional mortgages on the individual houses, second to $7,000 mortgages on each. The latter were to put the building company in funds to build the houses, and having built them with other funds it may be that it is entitled to the mortgages to rehabilitate itself. The question is not present, but it also suggests that perhaps our inquiry into the amount due the complainant, was one that concerned only the complainant and the building company. But at all events, whatever may be allowed the complainant, up to $49,000, can be of no hardship to the defendants for, if they are now the owners of the property and took it subject to the $7,000 mortgages, then the mortgages were part consideration of the conveyance; and if they are not the owners, if they have not accepted the deed, then, as second lien holders to mortgages of $49,000, they cannot say that they will suffer in the security they agreed to take. Of course, in the present juncture of the litigation, they are entitled to their security subject to the net priority encumbrances, but they will declare themselves before taking a secondary decree for the amount due them on their mortgage, so that any excess of proceeds of sale will go to the building company.
The complainant may have a decree for $34,250, with interest and costs. *Page 397